[Civ. No. 31806.   Second Dist., Div. Five.   Nov. 13, 1968.]

JOHN A. WALLER, JR., Plaintiff, Cross-defendant and Respondent, v. RUTH IRENE BROOKS, Defendant, Cross-complainant and Appellant.

Stapleton & Isen and F. G. Stapleton for Defendant, Cross-complainant and Appellant.

Robert Winckler for Plaintiff, Cross-defendant and Respondent.

STEPHENS, J.—This is a case involving two separate actions which were consolidated for the purposes of trial. Since in the one action (No. 856,467) Ruth Irene Brooks is plaintiff and John A. Waller, Jr. is defendant and cross-complainant, and in the other action (No. 862,256), Waller[1] is plaintiff and Brooks is defendant and cross-complainant, we shall henceforth refer to the parties by name rather than as plaintiff and defendant.

In action No. 856,467 Brooks filed a complaint seeking recovery on a promissory note plus interest and attorney fees. Waller admitted liability as alleged in Brooks' complaint but cross-complained for an amount purportedly due him on an open book account. The trial court found against Waller on his cross-complaint. Accordingly, judgment was rendered for Brooks against Waller on the promissory note, including

[1] One Eugenia Alford is a nominal plaintiff in action No. 862,256 along with Waller, who is the real party in interest.

interest and attorney fees. No appeal has been taken from this judgment.

In action No. 862,256 Waller sued Brooks for breach of contract and monies had and received by Brooks out of escrows involving certain real properties. Brooks filed an answer and counterclaim seeking to recover damages for certain allegedly fraudulent representations made by Waller. In addition, Brooks filed a cross-complaint seeking a declaratory judgment that Waller had forfeited his right to a return of the monies paid into escrow by reason of his own default, or, in the alternative, that Brooks was entitled to specific performance. At trial, the question of specific performance was not pressed, and is not an issue on this appeal. The trial court awarded judgment for Waller on his complaint in this action No. 862,256, and found against Brooks on her counterclaim and cross-complaint.

From a consolidated judgment entered on August 5, 1966, in which Brooks was allowed an offset for her judgment in action No. 856,467 on the promissory note, Brooks prosecutes this limited appeal specifically from the judgment in action No. 862,256 in favor of Waller on his complaint in that case.

Since no issue is raised as to the correctness of the trial court's calculations of the amounts involved in the various transactions, we will omit all reference to such in the interests of clarity. The contentions of Brooks on this appeal are essentially twofold:[2] (1) that the trial court erred in finding that Brooks breached the contract, and (2) that the trial court erred in finding that certain representations (allegedly) made by Waller to Brooks were not fraudulent.

The pertinent facts which gave rise to the present dispute can be summarized as follows: Prior to August 26, 1964 Alford (the nominee for Waller) was the record owner of a single family residence located at 1966 Outpost Circle, Hollywood, California. At that time Brooks was the record owner of a single family residence located at 3344 Bonnie Hill Drive, Hollywood, California, and two single family residences located at 20550 and 20552 Pacific Coast Highway, Malibu, California.

---

[2]In her opening brief, Brooks raises four issues: (1) that since she had complied with the escrow conditions and offered to perform any additional acts, it was error to hold that she breached the contract; (2) that Waller created a confidential relationship with Brooks enabling him to perpetrate a fraud upon her; (3) that since Brooks had substantially performed and made an offer to perform, she was entitled to specific performance or damages; and (4) that Waller made fraudulent representations, and it was error for the court to hold otherwise.

On or about August 26, 1964 Waller and Brooks entered into a contract which provided for a trade or exchange of Waller's equity in Outpost Circle[3] over and above a proposed first trust deed for the equity of Brooks in Bonnie Hill Drive, and 20550 Pacific Coast Highway over and above existing deeds of trust. Separate escrows were opened which recited the equity which each party had in their respective properties and the existing trust deeds to which Brooks' parcels were subject.

Subsequently, when it was discovered that the amount of the proposed first trust deed on Outpost Circle as originally contemplated by the parties was not obtainable, Waller and Brooks agreed that Waller would accept, in addition, Brooks' equity in 20552 Pacific Coast Highway, and a non-interest-bearing second trust deed on Outpost Circle to make up the difference.

On October 7, 1964, the Outpost Circle and Bonnie Hill Drive escrows were closed in accordance with their terms, and are not at issue in this litigation.

Subsequently it was discovered that certain third trust deeds on the Pacific Coast Highway properties which Waller had agreed to assume each contained an acceleration clause which provided that in the event of a sale or transfer of said properties all sums secured by such trust deeds may, at the option of the holder, become immediately due and payable.

On or about September 30, 1964, the parties executed an amendment to the escrow instructions, under which Brooks undertook to provide refinancing so that the acceleration clauses in the third trust deeds would be removed.

On September 30, Brooks executed and delivered into escrow a grant deed of the premises at 20550 Pacific Coast Highway to Alford/Waller.

On or about October 7, 1964, Brooks executed and delivered into escrow a grant deed of the premises at 20552 Pacific Coast Highway to Alford/Waller.

On or about February 25, 1965, Brooks caused the elimination of the acceleration clauses in the third trust deeds on each of the Malibu properties. On March 16, 1965, Brooks notified Waller by letter that the acceleration clauses in the third trust deeds had been eliminated. By letter dated March 27, 1965, Brooks notified Waller that she had given instructions that the Malibu property escrow was to close on April 5,

---

[3]For convenience, the properties involved will hereinafter sometimes be referred to by the names of the streets on which they are located.

1965. This letter also recited that Brooks had fully performed all obligations required of her and was ready, willing and able to perform any additional acts which might be necessary.

On April 8, 1965, Brooks notified Waller by letter that the escrow did not close on April 5 because of Waller's failure to comply with the escrow terms, and that unless Waller did so by April 15, Brooks would cancel the escrow.

Waller made no reply to, nor took any action with regard to, any of the above letters.

On April 19, 1965, Brooks notified Waller by letter that the escrow had been cancelled.

On or about April 5, 1965, Brooks had withdrawn the grant deeds to the Malibu properties and, in any event, as of that date there was no money in the escrow for a title policy and proration.

On the basis of the above facts, the trial court held that both parties were in breach of the underlying contract, and neither had complied with the terms of the escrow. The court then sought to return the parties as nearly as possible to the position they occupied prior to the transactions involving the Malibu properties.

Accordingly, the trial court denied Brooks' plea for specific performance, and awarded Waller the amount which he had invested in the Malibu properties, less the fair rental value of such properties during the period of Waller's occupancy, and less his fair share of the prorated real estate taxes on such property.

A consolidated judgment was entered for Waller against Brooks on his complaint in the amount of $32,041.58, from which figure an offset was given Brooks in the amount of $14,493 on her judgment in case No. 856,467, leaving a net balance of $17,548.58 due Waller.

■ Brooks' argument on this appeal is almost exclusively devoted to an attack on the sufficiency of the evidence to justify the findings of the trial court. In this respect, Brooks wholly misconceives the function of an appellate court which is to review errors of law, and not to pass on questions of fact. In effect, Brooks is asking this court to reweigh the evidence, a task which is beyond our province. In the present case, Brooks and Waller merely offered conflicting testimony as to the circumstances surrounding the various transactions. Brooks would have this court accept her version of the facts, notwithstanding contrary findings by the trial court. This we are not free to do. ■ Where the evidence

is in conflict, an appellate court will not disturb the findings of the trial court. Indeed, there is a presumption in favor of the facts as found by the lower court. (*Walling* v. *Kimball*, 17 Cal.2d 364, 373 [110 P.2d 58]; *Laymon* v. *Simpson*, 225 Cal. App.2d 50, 52 [36 Cal.Rptr. 859]; 3 Witkin, Cal. Procedure (1954) Appeal, § 79, pp. 2238-2239.)

■ Thus, a showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. (*Brown* v. *Newby*, 39 Cal.App.2d 615, 618 [103 P.2d 1018].) ■ It is an elementary principle of law that when a judgment is attacked as being unsupported, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the trial court's findings. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Curtis* v. *Mendenhall*, 208 Cal.App.2d 834, 838 [25 Cal.Rprt. 627]; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757]; 3 Witkin, Cal. Procedure (1954) Appeal, § 84, p. 2246.) ■ Of course, all of the evidence must be examined, but it is not weighed. (*Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384].) Thus, the conflicting evidence rule does not permit weighing of the evidence or reversal of a judgment in accordance with the preponderance thereof. (3 Witkin, Cal. Procedure (1954) Appeal, § 86, p. 2249.) The testimony of a single witness, even the party himself, may be sufficient, since it is the exclusive province of the trial court to determine the credibility of witnesses. (*Evje* v. *City Title Ins. Co.*, 120 Cal.App.2d 488, 492 [261 P.2d 279]; *Menning* v. *Sourisseau*, 128 Cal.App. 635, 639 [18 P.2d 77].)

■ With these principles in mind, we reject at the outset Brooks' contention that the evidence established the existence of a confidential relationship. Indeed, except for Brooks' own testimony, there is little, if any, evidence on which to predicate such a relationship.

Brooks next places great reliance on the fact that a letter from her to Waller dated March 27, 1965, recited that she was ready, willing and able to perform any additional acts which might become necessary. She contends that this letter constituted a valid tender of performance. ■ However, a mere indication of a willingness to perform in the future is not the equivalent of a valid, subsisting tender. A premature offer of performance is simply not a valid tender. (*Smith* v. *Hill*, 237 Cal.App.2d 374 [47 Cal.Rptr. 49].) A tender must not only be

of full performance, but it must be made at the proper time and place. (1 Witkin, Summary of Cal. Law (1960) Contracts, § 229, p. 258.)

Thus, Brooks' purported tender prior to the date when performance was due was not sufficient to charge Waller with an immediate breach. Furthermore, it is evident from the record that when the time set for performance actually arrived, Brooks had withdrawn the deeds from escrow. She did so on April 5, although the closing of the escrow had been extended to April 15. The trial court ruled that such action on her part constituted a breach of contract. We cannot disturb such finding since it is amply supported by the record.

The trial court having found that both parties were in breach, Brooks is in no position to object to the trial court's refusal to enforce a forfeiture against Waller. It is the law in California that even a wilfully defaulting vendee is entitled to restitution. (*Caplan* v. *Schroeder,* 56 Cal.2d 515, 519 [15 Cal.Rptr. 145, 364 P.2d 321] ; *Freedman* v. *Rector, Wardens etc. of St. Matthias Parish,* 37 Cal.2d 16, 22 [230 P.2d 629, 31 A.L.R.2d 1] ; *Branche* v. *Hetzel,* 241 Cal.App.2d 801, 807 [51 Cal.Rptr. 188].)

Furthermore, we are convinced that the trial court in the present case reached a just and equitable result in calculating the amounts due to the parties. The trial court credited Brooks with the reasonable rental value of the premises during Waller's occupancy, and allowed an offset for the pro-rated amount of real estate taxes on the property. Such credits were permissible and proper. (*Behrendt* v. *Abraham,* 64 Cal.2d 182, 188 [49 Cal.Rptr. 292, 410 P.2d 828].)

Lastly, Brooks attacks the trial court's findings that certain representations allegedly made by Waller were statements of opinion. Brooks contends that the evidence establishes not only that such statements were made, but that they were made fraudulently. The opposite was determined adversely to her by the trial court under conflicting evidence.

The findings on the fraud issue are no model. This may be partly due to a lack of enthusiasm on the part of the draftsman, he being the attorney for Brooks. Five misrepresentations were alleged in Brooks' cross-complaint. As to four of them the court found ''that they were statements of opinion and were not fraudulent.'' No purpose would be served by discussing them in detail. Brooks' attack on those findings must fail under the rules governing appellate review. With respect to each such finding the record supports the trial court

either on the theory that the representation was one of opinion, or was not fraudulently made.

More difficult is the lack of specific finding with respect to a charge that Waller falsely represented the value of the Outpost property to be $135,000. At the conclusion of the case the court announced from the bench after discussing the other charges of fraud: ''The fair and reasonable market value of property of $135,000 is merely an opinion and not a statement of fact and not based on any kind of appraisement this man could make or be qualified to make any more than I could tell you the value of my home. . . .''

We realize that a representation of value may, on occasion, be an actionable fraud (see Witkin, Summary of Cal. Law, Torts, §§ 188-190), but if the court had found any of the special conditions which make a representation of value actionable to exist, it could hardly have made the other findings from which the absence of those conditions is necessarily implied. ''It is not always necessary to make a specific finding as to each of several material issues where the findings taken as a whole, or construed together, clearly show that they include the court's conclusion upon all the material issues.'' (*Brown* v. *Schroeder,* 88 Cal.App. 192, 201 [263 P. 325] ; see also *Kaneda* v. *Kaneda,* 235 Cal.App.2d 404, 412-413 [45 Cal. Rptr. 437].)

The judgment is affirmed.

Kaus, P. J., and Moor, J. pro tem.,* concurred.

A petition for a rehearing was denied December 3, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1969.

---

*Assigned by the Chairman of the Judicial Council.