[Civ. No. 35104. Second Dist., Div. One. Nov. 4, 1970.]

FIRST SMALL BUSINESS INVESTMENT COMPANY OF LOS ANGELES, Plaintiff and Respondent, v. SISTIM, INC., Defendant and Appellant.

[Civ. No. 35103. Second Dist., Div. One. Nov. 4, 1970.]

FIRST SMALL BUSINESS INVESTMENT COMPANY OF LOS ANGELES, Plaintiff and Respondent, v. PATRICK F. KOENIGSBERGER, Defendant and Appellant.

(Two Cases.)

646

**COUNSEL**

Wright, Wright, Tolton & Van Zyl and Gyte Van Zyl for Defendants and Appellants.

Joseph J. Cogen, Goldstein, Gentile & Kirshman and Norman H. Kirshman for Plaintiff and Respondent.

**OPINION**

**GUSTAFSON, J.**—Defendant Patrick F. Koenigsberger was the president and principal shareholder of defendant Sistim, Inc. In 1965 Koenigsberger executed a promissory note in favor of plaintiff in the amount of $50,000

and Sistim, Inc., executed a promissory note in favor of plaintiff in the amount of $25,000.

In 1968, the notes not having been paid, plaintiff brought two actions, one against each defendant. Koenigsberger was served July 8, 1968, and Sistim, Inc., was served August 19, 1968. Default was entered against Koenigsberger July 24, 1968, and against Sistim, Inc., September 17, 1968. Judgment was taken against Koenigsberger October 13, 1968, and against Sistim, Inc., October 23, 1968. On December 4, 1968, each defendant noticed a motion to be relieved from the default entered and the judgment taken. The motions were heard together on April 10, 1969, and denied on that date. A notice of appeal with respect to each order was timely filed. ■ The orders are appealable. (Code Civ. Proc., § 904.1.) We treat both appeals in this opinion.

Section 473 of the Code of Civil Procedure provides in part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken; . . ."

The motions are deemed to have been made when the notices of motion were filed (Code Civ. Proc., § 1005.5; *Garcia* v. *Gallo* (1959) 176 Cal. App.2d 658 [1 Cal.Rptr. 539]) and thus were made within six months of the entries of default and the default judgments.

Each notice of motion was accompanied by the required copy of the proposed answer. Each proposed answer raises numerous defenses. The proposed answers allege that plaintiff is a licensee of the federal Small Business Administration subject to the provisions of the Small Business Investment Act (15 U.S.C. § 681 et seq.); that plaintiff to maintain its status as a licensee was required to increase its capital; that defendant Koenigsberger desired to borrow $50,000 from plaintiff to invest in a proposed life insurance company; that as a condition to making the loan, plaintiff required that defendant Koenigsberger acquire 2,500 shares of plaintiff's stock for the sum of $25,000; that plaintiff was authorized by the California Commissioner of Corporations to issue 2,500 shares of plaintiff's stock to defendant Koenigsberger only for cash; that the shares were issued to defendant Koenigsberger not for cash, but for a note in the amount of $25,000 signed by Sistim, Inc.; that contrary to the agreement between plaintiff and defendant Koenigsberger, Koenigsberger's payments to plaintiff

were not applied solely to the note signed by Koenigsberger; and that the sale of the stock was in violation of both federal and state law as a consequence of which plaintiff was not entitled to collect from either Sistim, Inc., or from Koenigsberger.

At the hearing on the motion, the trial court had before it an affidavit of Koenigsberger and an affidavit of E. L. Harmon, president of plaintiff, which contradicted statements made in Koenigsberger's affidavit. The oral arguments were directed almost exclusively to the validity of the defenses of illegality. In denying the motions, the trial court said: "It seems to me that if I were to grant these motions I would be reopening up a whole can of worms and allowing you to litigate a lot of things and spend a great deal of time on a claim that may or may not have a defense to it. If the defense of illegality is any good that is a matter of law. . . . I don't buy the legal position. If I am wrong [the Court of Appeal] will let us know." Thus it is clear from the record that the trial court did not reach the questions of whether the motions were made "within a reasonable time" and whether defendants showed excusable neglect.

■ As originally enacted in 1872, section 473 of the Code of Civil Procedure required that a motion to be relieved from default be supported by an "affidavit showing good cause therefor." (This is no longer a requirement of the statute, although why a party is in default must obviously be shown by affidavit.) As originally enacted, the statute did not require that the moving party submit a copy of his proposed pleading. (Since 1917 the statute has contained this requirement.) The genesis of section 473 of the Code of Civil Procedure was section 68 of the Practice Act. (Stats. 1851, ch. 5, p. 51.) Although the Practice Act made no mention of an affidavit of merits, *Bailey* v. *Taaffe* (1866) 29 Cal. 422 read into the Practice Act the requirement of an affidavit of merits. ■ The common practice is for the moving party to state by way of affidavit that he has fully discussed all of the facts of the case with his attorney and has been advised that he has a good defense. (*Woodward* v. *Backus* (1862) 20 Cal. 137.) It is not necessary that the affidavit of merits should disclose the facts constituting the defense. (*Francis* v. *Cox* (1867) 33 Cal. 323.) Thus the customary affidavit of merits is wholly uninformative. ■ Since the affidavit of merits "is not a jurisdictional element for granting relief under" section 473 of the Code of Civil Procedure, it was logical for the Supreme Court to accept as a substitute for an affidavit of merits a proposed verified answer, similarly uninformative, denying all of the allegations of the complaint. (*Melde* v. *Reynolds* (1900) 129 Cal. 308 [61 P. 932].) That a verified answer setting forth a defense to the cause of action "meets all the requirements of an

affidavit of merits is, of course, well settled." (*Savage* v. *Smith* (1915) 170 Cal. 472 [150 P. 353].)

■ The reason for requiring a moving party to show more than that his default was excusable is that "[e]very consideration of expediency and justice is opposed to the opening up of cases in which judgment by default has been entered, unless it . . . appear[s] *prima facie* that the judgment, as it stands, is unjust." (*Parrott* v. *Den* (1867) 34 Cal. 79.) The reason is stated somewhat differently in *Greenamyer* v. *Board of Lugo Elementary School Dist.* (1931) 116 Cal.App. 319 [2 P.2d 848] where it is said that "a valid judgment should not be set aside unless it is made to appear, *prima facie,* that a different result would probably be reached." Logically an unjust judgment is one which would *not* have been reached had there been a trial on the merits, not one which would *probably not* have been reached by a trial on the merits.

Quite obviously the customary affidavit of merits (or a proposed verified answer denying all of the material allegations of the complaint) does not show, *prima facie* or otherwise, that the default judgment in favor of plaintiff either would not or probably would not have been entered had defendant made a timely response to the complaint. Proof of the fact exists in the countless cases when defendants have been successful in setting aside default judgments only to later lose on the merits.

If the reasons ascribed for requiring an affidavit of merits are to be satisfied, this can be done by nothing short of a review of all of the evidence which is available to both plaintiff and defendant. But it was early held that a hearing on a motion to relieve a defendant from default is not the place or time to ascertain whether defendant really has a defense.

*Douglass* v. *Todd* (1892) 96 Cal. 655 [31 P. 623] held that "proper practice does not permit the facts stated in defendant's affidavit, which constitute his defense to the action, to be rebutted by counter-affidavits. The court will not try the merits of the case upon affidavits, but will hear counter-affidavits as to the excuse for permitting the default." In *Rauer's Law, etc. Co.* v. *Gilleran* (1903) 138 Cal. 352 [71 P. 445] the trial court, suspecting that the uninformative affidavit of merits was untrue, denied a motion to vacate the default judgment when the defendant refused to be examined under oath by the trial court as to the nature of the defense. The order was reversed on the grounds that the affidavit of merits cannot be contradicted and that the merits of the case cannot be tried at the hearing on the motion. In *Beard* v. *Beard* (1940) 16 Cal.2d 645 [107 P.2d 385], while the defendant's affidavit of merits did not disclose that he had a valid defense, the allegations of the proposed verified answer if true would have

entitled defendant to judgment. The Supreme Court held that the trial court was entitled to disregard the affidavit of merits and consider that the proposed answer raised "an issue of fact and law which the court was justified in holding a meritorious defense." ■ Whether the defendant relies upon a proposed verified answer or upon an affidavit of merits, the plaintiff is not entitled to show that the facts are different from what defendant asserts. "Counter-affidavits going to the merits of the case are therefore irrelevant and improper." (*Salsberry* v. *Julian* (1929) 98 Cal.App. 638 [277 P. 516].) ■ A hearing on the motion to relieve the defendant from default "is not the occasion to try the merits. . . ." (*Skolsky* v. *Electronovision Productions, Inc.* (1967) 254 Cal.App.2d 246 [62 Cal. Rptr. 91].)[1]

Not only does an affidavit of merits (or a proposed verified answer) not serve the purpose for which it has been held to be intended, but many reasons come readily to mind why, for the orderly administration of justice, a party in default should be put in exactly the same position where he would have been had he not defaulted upon a timely showing only that he defaulted through mistake, inadvertence, surprise or excusable neglect. It is pointless to set forth these reasons here because the requirement of an affidavit of merits has been held to exist as recently as 1967. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251 [62 Cal.Rptr. 12, 431 P.2d 636].)

We can find no indication, however, that the Supreme Court has ever retreated from its decisions that whether a party has a meritorious position is to be determined solely from his affidavits, declarations and pleadings and not by considering declarations submitted by the opposing party.

■ One of the defenses in the proposed answer submitted by defendant Koenigsberger and supported by his declaration is partial payment of the note. Plaintiff submitted a declaration of its president contradicting defendant's position. Plaintiff seeks to uphold the ruling of the trial court on the ground that the trial court "resolved the conflict" on the basis of conflicting declarations. It was error to consider plaintiff's declaration. Defendant Koenigsberger's affidavit and proposed answer disclosed at least one meritorious defense. .

---

[1]*H. A. Pulaski, Inc.* v. *Abbey Contr. Specialties, Inc.* (1969) 268 Cal.App.2d 883 [74 Cal.Rptr. 590], upon which plaintiff relies, appears to be contrary to the Supreme Court decisions. There the defendant as the moving party filed a proposed verified answer containing allegations which, if true, would have constituted a defense to the complaint. The allegations were disputed by a declaration filed on behalf of plaintiff. The trial court's order denying a motion to vacate the default was upheld on the ground that the "trial court was acting within its discretion in determining that a showing of a meritorious defense had not been made." There was no petition for hearing in the Supreme Court.

With respect to defendant Sistim, Inc., plaintiff concedes that if "Koenigsberger's version of the transaction is accepted, [Sistim, Inc.] may have raised an issue under the California Corporate Securities laws." Plaintiff defends the order of the trial court on the ground that the declaration of plaintiff's president contradicted the declaration of the president of defendant Sistim, Inc., and that the trial court resolved the conflict in the evidence. Again, it was error to consider the declaration filed on behalf of plaintiff in determining the merits of the position of defendant Sistim, Inc.

█ Although we must reverse the order in each case, we do so not because either motion should have been granted, but because neither motion should have been denied on the ground that no meritorious defense was shown. Thus it remains for the trial court to determine whether the defendants sought relief within a reasonable time and whether they should be relieved from the defaults entered against them by reason of mistake, inadvertence, surprise or excusable neglect. Had the trial court decided these issues first as it should have done (*Chase* v. *Swain* (1858) 9 Cal. 130), our disposition would not have required further consideration of the motions by the trial court.

On the record before us, we cannot say as a matter of law that orders denying the motions for untimeliness or for failure to show excusable neglect would have been an abuse of discretion by the trial court. Koenigsberger was served in the action against him July 8, 1968, and as the president of Sistim, Inc., in the action against that corporation on August 19, 1968. It was not until after November 19, 1968, that he retained present counsel on behalf of himself and Sistim, Inc. His excuse for not responding to the summons and complaint in each case within the time allowed by law was that he was ill (but the declaration of his physician shows only that he was suffering from hemorrhoids and from other undisclosed "distresses"), that he was in a state of despair because of financial reverses and that he thought there was nothing which could be done in defense of the actions because the promissory notes had in fact been signed and were in fact in arrears. Although he claims to have referred the papers with which he was served to an attorney in September 1968 (after responsive pleadings were due) and that the attorney declined to handle the matter, he does not name the attorney or give any further details regarding the alleged referral. He also claims that he referred the papers to a second attorney whose name is undisclosed and who declined by letter of November 18, 1968, to handle the matter.

Each order is reversed and each case is remanded to the trial court for determining whether the defendant in each case is entitled to relief from

default by reason of mistake, inadvertence, surprise or excusable neglect and for determining whether application for relief from default was made within a reasonable time after the default was entered.

Wood, P. J., and Thompson, J., concurred.