[Civ. Nos. 48891, 48953. Second Dist., Div. Five. Feb. 28, 1977.]

MORRIS ROBINSON, Plaintiff and Appellant, v.
VIRGILIO VARELA, Defendant and Respondent.

**COUNSEL**

Morris Robinson, in pro. per., and Radoff & Radoff for Plaintiff and Appellant.

Brady & Greenfield and Myles M. Mattenson for Defendant and Respondent.

---

## OPINION

**STEPHENS, Acting P. J.**—Plaintiff and appellant, Morris Robinson, enters the following appeals from orders vacating a default judgment and dissolving a writ of attachment. These appeals have been consolidated pursuant to the request of defendant, Virgilio Varela. For the reasons set forth below we affirm both orders.

### FACTS

These cases arise out of a dispute between the parties as to a sublease of certain commercial property. Defendant, desirous of purchasing a car wash located on property upon which plaintiff was a tenant, entered into a written contract with plaintiff whereby he agreed to assume the obligations of subtenant and make certain improvements on the property upon the express condition that plaintiff obtain from the lessors a 10-year extension of the underlying lease. Though a tentative agreement was made between plaintiff and the lessors for an extension, a formal written amendment to the lease was never executed by the lessors. Moreover, defendant took possession of the property in July 1975, but failed to pay any rent to plaintiff.

On Friday, December 19, 1975, plaintiff filed an action against defendant for unlawful detainer and for damages for breach of a lease. The next day defendant was served with process, and on the following Monday, December 22, a copy of the summons and complaint was delivered to the law office representing defendant. On Wednesday, defendant's attorney contacted the law firm representing plaintiff to obtain an extension of time in which to answer. Plaintiff's attorney was not present, and no one else would grant the extension. Finally, on Monday, December 29, defense counsel again attempted to reach plaintiff's attorney, this time only to discover that plaintiff had just filed for default.

On January 8, 1976, following a hearing on the default, a default judgment was entered against defendant. On January 19, 1976, defendant sought to have the judgment vacated, alleging by motion under

section 473 of the Code of Civil Procedure that the judgment was taken as a result of attorney's mistake, inadvertence, surprise or excusable neglect. The trial court granted defendant's motion and set aside the default.

A separate action for rent was filed by plaintiff on January 9, 1976. Concomitant with this action, plaintiff applied for a writ of attachment and temporary restraining order against defendant. At the hearing on this application, plaintiff presented evidence of a purported agreement with the lessors for a 10-year lease extension. Counsel for the lessors had conceded that there was such an agreement but insisted upon defendant's execution of a lease guarantee. Plaintiff then testified that the guarantee which the lessors sent him together with the lease amendment had been signed by defendant. On the basis of this showing, the court concluded that the lease extension had in fact been granted plaintiff, leaving defendant with no viable defense to plaintiff's rent action. The court thus issued the writ of attachment.

On February 23, 1976, defendant filed a motion to reconsider, asking that the court discharge the attachment. At the hearing on this motion the court was presented with evidence that the written lease amendment, embodying the 10-year lease extension, had never been signed by the master lessors. Upon such evidence the court determined that its prior ruling was erroneous, and ordered that the writ of attachment be dissolved.

## DISCUSSION

### Order Vacating the Default Judgment

Appellant's primary contention is that the trial court abused its discretion in setting aside the default as there was no showing under section 473 of the Code of Civil Procedure[1] that the neglect of defense counsel in failing to file a timely answer to the unlawful detainer action was excusable. We disagree.

An evaluation of an attorney's neglect under section 473 involves a consideration of the reasonableness of the defaulting attorney's

---

[1]Section 473, in part, provides as follows: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

conduct (see *Dockter* v. *City of Santa Ana,* 261 Cal.App.2d 69, 75 [67 Cal.Rptr. 686]) *and* of the conduct of the attorney taking the default (e.g., *Smith* v. *Los Angeles Bookbinders Union,* 133 Cal.App.2d 486, 500 [284 P.2d 194]). The law looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." Thus, the "quiet speed" of a plaintiff's counsel in seeking a default has been deemed a sufficient ground for setting aside a default under section 473. (*Smith* v. *Los Angeles Bookbinders Union, supra.*)

■ Whether we characterize the conduct of defendant's counsel as reasonable or the conduct of plaintiff's counsel as unreasonable—the result is the same under the peculiar factual context of this case. Given the short period of time in which an answer had to be filed, and the press of business at defense counsel's office arising from the illness of the chief trial attorney, the limited office hours during Christmas week, and defense counsel's preoccupation with other litigated matters, it might be found that the failure to file a timely answer or a request for an extension to file an answer was excusable. (See 5 Witkin, Cal. Procedure (2d ed. 1971), Attack on Judgment in Trial Court, § 139, p. 3714.) On the other hand, it might also have been found that reliance upon opposing counsel to give notice prior to taking default was justifiable (see 5 Witkin, *supra,* § 140, at p. 3715), or contrariwise, that the quiet taking of default on the beginning of the first day on which defendant's answer was delinquent was the sort of professional discourtesy which, under *Smith,* justified vacating the default. In either case, given the broad discretion with which the court was vested in making its determination under section 473, and the policy favoring orders which permit a hearing on the merits, we are of the view that the court acted well within its discretion in setting aside the default judgment. (See *Weitz* v. *Yankosky,* 63 Cal.2d 849, 854-855 [48 Cal.Rptr. 620, 409 P.2d 700].)

■ Plaintiff also alleges that the trial court abused its discretion in setting aside the default since defendant failed to act reasonably in applying for relief from the default and since defendant failed to set forth a meritorious defense. (See *Bailey* v. *Roberts,* 271 Cal.App.2d 282, 285 [76 Cal.Rptr. 572].) These claims are without merit. As to defendant's proposed answer, there were specific denials of most of the allegations in the complaint clearly raising issues of fact and law concerning the validity of the sublease which the court was justified in holding a meritorious defense. (See *Beard* v. *Beard,* 16 Cal.2d 645, 649 [107

Cal.Rptr. 385]. See also *First Small Business Inv. Co.* v. *Sistim, Inc.,* 12 Cal.App.3d 645, 650-651 [90 Cal.Rptr. 798]. But see *A & B Metal Products* v. *MacArthur Properties, Inc.,* 11 Cal.App.3d 642, 649-650 [89 Cal.Rptr. 873].) Application for relief under section 473 of the Code of Civil Procedure was made within 21 days after entry of default, and just 12 days from the time the default judgment was taken. Considering the circumstances in this case we cannot say that such a delay was unreasonable as a matter of law. (See *Pearson* v. *Continental Airlines,* 11 Cal.App.3d 613, 619 [89 Cal.Rptr. 853] [20-day delay]; *Outdoor Imports, Inc.* v. *Stanoff,* 7 Cal.App.3d 518, 523 [86 Cal.Rptr. 593].)

*Order Discharging the Writ of Attachment*

Plaintiff contends that the trial court had no power to dissolve the writ of attachment since there was neither a claim by defendant nor a finding by the court that the writ was "improperly issued" within the meaning of section 556 of the Code of Civil Procedure authorizing the discharge of such writs.[2] Despite the fact that defendant's motion was in the form of a motion to reconsider, the gravamen of the motion, however, was for relief under section 556, and we view it as such. (See *City & County of S. F.* v. *Muller,* 177 Cal.App.2d 600, 603 [2 Cal.Rptr. 383].) The precise issue with which we are faced, therefore, is whether a writ of attachment has been improperly issued under section 538.4 of the Code of Civil Procedure when it is later made to appear that the defendant has a reasonable probability of asserting a successful defense to the claim asserted by the plaintiff.

Section 538.4 of the Code of Civil Procedure provides for a hearing prior to the issuance of a writ of attachment, and limits the issuance of such writs to cases in which "grounds for the issuance of an attachment exist," and where "the plaintiff has established the probable validity of his claim and the absence of any reasonable probability that a successful defense can be asserted by the defendant. . . ." This provision was enacted in 1972 (Stats. 1972, ch. 550, § 12) in direct response to the due process mandate set forth in *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], concerning the issuance of

---

[2]Section 556 provides: "The defendant may also at any time, either before or after the release of the attached property, or before any attachment shall have been actually levied, apply, on motion, upon reasonable notice to the plaintiff, to the court in which the action is brought, or to a judge thereof, that the writ of attachment be discharged on the ground that the same was improperly or irregularly issued."

prejudgment writs of attachment.[3] The addition of a hearing prior to the *issuance* of the writ necessarily enlarges the grounds for *discharge.* ■ Defects in the hearing, including erroneous determinations as to the probable validity of a plaintiff's claim, render a writ "improperly" issued within the meaning of section 556 of the Code of Civil Procedure. (Cf. Code Civ. Proc., § 485.240, Stats. 1974, ch. 1516, § 9, effective Jan. 1, 1977 [replacing § 556 of Code Civ. Proc.]; Recommendation Relating to Prejudgment Attachment, 11 Cal. Law Revision Com. Rep. (1973) pp. 701, 706.) Notwithstanding pre-*Randone* case law which excludes the issue of a defendant's liability from consideration on a motion to discharge an attachment (see, e.g., *Minor* v. *Minor,* 175 Cal.App.2d 277, 280 [345 P.2d 954]), we are of the view that the *Randone* hearing requirements now compel just such a consideration.

■ Plaintiff raises numerous arguments as to the validity of his underlying claim for rent against defendant, challenging the court's finding that defendant had a reasonable probability of successful defense. In essence, the court concluded that the lessors had expected a written formal lease amendment to be their contract with plaintiff for the 10-year lease extension. Because it found that the lease amendment was never signed by the lessors, the court reasoned that the 10-year extension had never been granted, and thus defendant could validly assert that there was a failure of a condition precedent to his liability on his sublease with plaintiff. Plaintiff's arguments as to the existence of a valid contract to extend the lease prior to the execution of the sublease with defendant fail to directly challenge the evidentiary support for the court's conclusion that the parties contemplated a formal document to be their contract. We see no infirmity in the court's finding, and therefore uphold it as being supported by substantial evidence. (See *Waller* v. *Brooks,* 267 Cal.App.2d 389, 394 [72 Cal.Rptr. 228].)

Finally, plaintiff claims that the court erred in denying him the opportunity to examine defendant concerning their sublease arrangement. ■ It is settled law, however, that in a hearing upon a motion a court has the discretion to refuse oral testimony and decide the issues raised upon declarations alone. (*Reifler* v. *Superior Court,* 39 Cal.App.3d

---

[3]*Randone* struck down former section 537 of the Code of Civil Procedure, providing for the ex parte issuance of a writ of attachment, as unconstitutional. Noting that the provision at issue provided none of the necessary due process safeguards, the court declared, "[w]e do not doubt that a constitutionally valid pre-judgment attachment statute, which exempts 'necessities' from its operation, can be drafted by the Legislature to permit attachment generally after notice and a *hearing on the probable validity of a creditor's claim* . . . ." (5 Cal.3d 536, 563; italics added.)

479, 483 [114 Cal.Rptr. 356].) Even if we assume that plaintiff had the absolute right to present such testimony under section 557 of the Code of Civil Procedure,[4] there has been no showing that the denial of this right proved prejudicial. No testimony by defendant could place the lessor's signatures on the lease amendment. Thus it appears that the result would have been the same regardless of such testimony. (See *Fidelity & Dep. Co.* v. *Claude Fisher Co.,* 161 Cal.App.2d 431, 435 [327 P.2d 78].)

The orders of the superior court vacating the default judgment and dissolving the writ of attachment are affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1977.

---

[4]Section 557 provides: "If the motion [to discharge the writ of attachment] be made upon affidavits on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits or other evidence, in addition to those on which the attachment was made." (Repealed Stats. 1974, ch. 1516, § 12, Stats. 1975, ch. 200, § 2, effective Jan. 1, 1977.)