Filed 12/20/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SANTA CLARA WASTE WATER COMPANY,<br><br>Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>ALLIED WORLD NATIONAL ASSURANCE COMPANY,<br><br>Defendant, Cross-complainant and Respondent;<br><br>GREEN COMPASS ENVIRONMENTAL SOLUTIONS, LLC,<br><br>Cross-defendant and Appellant. | 2d Civil No. B279679<br>(Super. Ct. No. 56-2014-00461747-CU-IC-VTA)<br>(Ventura County) |

Santa Clara Waste Water Company (SCWW) and Green Compass Environmental Solutions, LLC (GCES) appeal an order granting Allied World National Assurance Company's applications for prejudgment attachment. SCWW and GCES

seek reversal of the order on the ground that Allied did not show the probable validity of its claims as required by Code of Civil Procedure section 484.090, subdivision (a).[1]  We affirm.

## FACTS AND PROCEDURAL HISTORY

SCWW owned a wastewater treatment facility in Santa Paula.  GCES, a subsidiary company owned by SCWW, operated a trucking unit that transported wastewater.  SCWW and GCES applied for insurance coverage with Allied.  In their insurance application and related correspondence, SCWW and GCES represented that they did not accept, process, transport, or discharge hazardous waste.

Allied issued a $2 million "Primary Environmental Liability Policy" and a $5 million umbrella policy.  The policy covered "'environmental damage'" or "'emergency response expenses'" arising out of a "'pollution incident.'"  The policy also contained an "intentional noncompliance" provision, which excluded coverage for damages resulting from the "intentional disregard of or deliberate willful or dishonest noncompliance" with law or regulations.

After obtaining coverage, a GCES vacuum truck exploded at the SCWW facility when a truck driver mixed wastewater with a chemical (sodium chlorite).  Chemical spillage from the explosion spontaneously combusted and caused a fire.  SCWW submitted a claim to Allied to cover the cleanup costs.  Allied did not pay the claim.

The parties entered mediation and reached a partial settlement including a "Payment Term Sheet."  The Payment Term Sheet provided that Allied would pay $2.5 million to

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

2

SCWW, but if Allied obtained a judgment that it was not obligated to pay SCWW's damages under its policy, then SCWW would reimburse Allied. Allied paid the $2.5 million.

SCWW sued Allied for failing to pay damages up to the policy limit. Allied filed a first amended cross-complaint against SCWW and GCES for declaratory relief, reimbursement of defense costs and expenses, unjust enrichment, fraud, rescission, and unlawful business practices.

Allied filed applications for a right to attach order and writ of attachment against both SCWW and GCES for $2.5 million plus costs and interest based on an express contract (the Payment Term Sheet) and implied contract theories of unjust enrichment and rescission.[2] In support of its applications, Allied presented evidence showing that the intentional noncompliance policy exclusion applied because SCWW and GCES violated laws and regulations when they stored and concealed the presence of sodium chlorite at the facility. Allied also presented evidence showing that the policy should be rescinded because SCWW and GCES misrepresented that they did not accept, process, transport, or discharge hazardous waste.

---

[2] Although GCES is not a party to the Payment Term Sheet, GCES raises the issue of its nonsignatory status for the first time in its reply brief on appeal. Failure to raise a timely objection forfeits the argument. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433 (*Tudor Ranches*) [failure to object and give the trial court an opportunity to consider an issue forfeits the issue on appeal]; *Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 [failure to raise an argument in the opening brief waives the issue on appeal].)

The trial court granted the applications, finding that Allied "established the probable validity of its implied contract and rescission claims." Specifically, it found the evidence supported the "applicability of the 'intentional noncompliance' policy exclusion, and the existence of hazardous waste discharge prior to the policy application." The court issued writs of attachment against both SCWW and GCES.

## DISCUSSION

### *Prejudgment Attachment*

SCWW and GCES contend the trial court erred in granting the applications for prejudgment attachment because Allied did not establish the probable validity of its claims. We disagree.

A party seeking a prejudgment attachment must demonstrate the probable validity of its claim. (§ 484.090, subd. (a).) Probable validity means that "more likely than not" the plaintiff will obtain a judgment on that claim. (§ 481.190.) An order granting an application for a prejudgment attachment is directly appealable. (§ 904.1, subd. (a)(5).) A trial court's finding on whether a plaintiff established probable validity is reviewed for substantial evidence. (*Lorber Industries v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535.)

### *Unjust Enrichment*

Allied established the probable validity of its unjust enrichment claim. Where an insurer pays an amount not covered under its policy, it has a right of reimbursement that is implied-in-law under an unjust enrichment theory. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 51.)

Allied had a right of reimbursement because the intentional noncompliance policy exclusion applied. Under this

4

exclusion, if the damages (i.e., cleanup costs) resulted from SCWW and GCES's intentional noncompliance with law and regulations, then Allied was not obligated to pay damages.

SCWW and GCES failed to comply with law and regulations when they stored sodium chlorite at the facility. They were required to report and update a "Hazardous Materials Business Plan" within 30 days of receiving a 275-gallon container of sodium chlorite. (Health & Saf. Code, § 25508.1.) They did not do so.

Moreover, SCWW and GCES failed to comply with law when they concealed chemicals from inspectors. Employees testified that they consolidated and cleaned chemical totes before inspections to hide the presence of unreported chemicals at the facility. Employees removed labels from chemical totes that identified their contents or indicated they were hazardous materials. SCWW's environmental compliance manager admitted that he ordered employees to move unreported chemicals to a trucking yard before an inspection in order to hide them from the inspectors. The storage of these chemicals at the trucking yard violated SCWW's lease with the City of Santa Paula.

The cleanup costs resulted from SCWW and GCES's intentional noncompliance with law and regulations. Moments before the explosion, a truck driver was cleaning sodium chlorite totes to prepare for an inspection the next day. Because the presence of sodium chlorite was unreported, it was illegally stored at the facility and should not have been present. The explosion and fire occurred when wastewater mixed with sodium chlorite. Thus, the unreported presence of sodium chlorite was the cause of the explosion and fire.

Because the evidence supports the trial court's finding that the intentional noncompliance exclusion applies, the trial court properly found that Allied established the probable validity of prevailing on its unjust enrichment claim.

*Rescission*

Although the unjust enrichment claim alone is sufficient to support an order for prejudgment attachments, Allied also established the probable validity of its rescission claim. Misrepresentation or concealment of a material fact in connection with an insurance application is grounds for rescission of the policy. (Ins. Code, § 359; *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 191.) "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract." (Ins. Code, § 332.) In determining whether a fact is material, we consider the "probable and reasonable" effect a misrepresentation of that fact has on the insurer. (Ins. Code, § 334.)

Here, SCWW and GCES's representation that they did not accept, process, transport or discharge hazardous waste was a material fact because Allied asked questions regarding hazardous waste in its application and related correspondence, including whether SCWW and GCES transported hazardous waste, the type of waste they disposed of, and several questions regarding their history of hazardous waste discharge. An Allied executive declared that Allied would not have issued a policy under the same terms if SCWW had represented that "it accepted, stored, or disposed of hazardous waste at any of its facilities," and that Allied would not have added GCES under an

6

umbrella policy if Allied knew GCES transported any hazardous waste.

Substantial evidence supports the finding that SCWW and GCES misrepresented and concealed this material fact. The evidence showed that SCWW and GCES accepted, processed, and transported wastewater regardless of whether it tested positive as hazardous. For instance, before Allied's policy was in effect, SCWW ordered a wastewater sample to be retested after it tested positive for "corrosivity." The proper action was to identify the wastewater as hazardous and reject it, but SCWW ordered the sample to be retested. In another instance, when SCWW retained a lab to produce reports to send to regulatory agencies, it ordered the lab not to send any reports of wastewater samples with a pH level above 12.5 (which indicated hazardousness). Other evidence shows that SCWW accepted and transported wastewater knowing that it exceeded a pH of 12.5.

Additionally, the evidence shows that SCWW discharged wastewater that it knew was hazardous. SCWW's environmental compliance manager admitted that he altered lab results of wastewater that was discharged into pipelines connected to the Oxnard water treatment facility to reflect levels of pollutants below the pollutant discharge limit.

The evidence shows that SCWW and GCES's misrepresentations both preceded and followed the effective date of coverage. The dates on the lab results reflect that SCWW altered results even before Allied's policy was in effect. After the policy went into effect, but before the explosion incident, the City of Oxnard sent SCWW a cease and desist letter because tests revealed that wastewater being discharged into pipelines violated

the discharge limits under SCWW's Industrial Wastewater Discharge Permit.

SCWW and GCES claim the trial court erred in its ruling on the rescission claim because Allied did not assert a separate claim of rescission in its applications for an attachment. But Allied expressly stated that it based its applications for prejudgment attachment "under two implied contract theories: unjust enrichment and rescission."

SCWW and GCES also argue that Allied cannot prevail on its rescission claim because it was required but failed to give proper notice and to offer to restore premiums prior to bringing its rescission claim. (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 921; *Joshua Tree Townsite Co. v. Joshua Tree Land Co.* (1950) 100 Cal.App.2d 590, 596.) But filing the action was sufficient to meet those requirements here. (*Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 164, 166-167.) "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Civ. Code, § 1691.)

We also reject SCWW and GCES's claim that the trial court erred in finding they discharged hazardous waste because there was insufficient evidence that wastewater was in fact hazardous. This claim is forfeited because it was not raised in the trial court. (*Tudor Ranches*, *supra*, 65 Cal.App.4th at p. 1433.) But, this claim also fails on the merits based on the lab results and the cease and desist letter showing that the discharged wastewater exceeded pollutant discharge limits.

8

*No Express Contract or Condition Precedent*

SCWW argues that Allied cannot prevail on implied contract theories because the same subject matter is addressed in an express contract (i.e., the Payment Term Sheet). (*Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605, 613.) SCWW forfeited this argument because it was raised for the first time on appeal. (*Tudor Ranches*, *supra*, 65 Cal.App.4th at p. 1433.) It also fails on the merits.

The trial court did not err in granting the applications for prejudgment attachment based on implied contract theories even if an express contract covers the same subject. First, SCWW and GCES cannot assert the existence of an express contract when they successfully argued for the exclusion of that contract from evidence. Under the invited error doctrine, a party cannot challenge a court's finding made at its insistence. (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.) Here, SCWW and GCES argued that the Payment Term Sheet was inadmissible and was not an express contract on which the applications for prejudgment attachment can be based. They raised an evidentiary objection to the Payment Term Sheet, which the trial court sustained. Because the court excluded the Payment Term Sheet at their request, they are barred on appeal from asserting that the trial court failed to consider the Payment Term Sheet.

Moreover, even if the Payment Term Sheet is a valid express contract, the court properly granted the applications for prejudgment attachment based on implied contract theories. An attachment may be granted if a party shows the probable validity of the claim on a contract that is either express or implied. (§ 483.010, subd. (a).) All that is required is proof that the amount

9

is due based on a contract. (*Eaton v. Queen* (1947) 78 Cal.App.2d 571, 574.) Where there is both an express and implied contract, relief is available under an implied contract if the material terms do not conflict with the express contract. (*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 1001.) Here, the material terms of the Payment Term Sheet and the implied contract are the same—that the $2.5 million Allied paid would be reimbursed if the policy did not cover SCWW and GCES's cleanup costs.

SCWW and GCES also claim that the order granting the applications for prejudgment attachment was improper because a judgment of noncoverage was a condition precedent. This claim lacks merit. The purpose of a writ of attachment is to ensure payment will be recovered if judgment is entered. Allied is only required to establish the "probable validity" of its claims. Whether Allied's claims are "actually valid" is determined in a subsequent proceeding and not affected by the court's order on the applications for prejudgment attachment. (§ 484.050, subd. (b).) An attachment remedy would be useless if it required the court to first decide the merits and issue a judgment.

SCWW and GCES's reliance on *Robinson v. Varela* (1977) 67 Cal.App.3d 611 is misplaced. In *Robinson*, the trial court dissolved a writ attachment that was previously granted to a plaintiff, who claimed the defendant failed to pay rent on a sublease. (*Id.* at p. 618.) The court dissolved the writ attachment when the defendant successfully argued that no rent was due because the plaintiff failed to satisfy a condition precedent— obtaining a lease extension from the owner. (*Ibid.*) But here, all that Allied had to establish was the probability that their policy did not cover the damages. Allied did so by showing that the

10

noncompliance policy exclusion applied and that SCWW and GCES misrepresented and concealed material facts. The trial court properly granted Allied's applications for prejudgment attachment based on these claims against SCWW and GCES.

### *Prejudgment Interest*

SCWW and GCES contend that prejudgment interest should be calculated from the date of the judgment awarding reimbursement, and not from the date Allied paid $2.5 million. This claim is forfeited, because no objection to prejudgment interest was made below. (*Tudor Ranches*, *supra*, 65 Cal.App.4th at p. 1433.)

Even if we address the claim on its merits, there was no error. Prejudgment interest begins to accrue from the date Allied paid the $2.5 million because interest is owed from the time the obligation to pay money begins, even if judgment awarding the reimbursement is decided on a later date. (See *Ohio Casualty Ins. Co. v. Garamendi* (2006) 137 Cal.App.4th 64, 84 ["prejudgment interest should accrue from the date the assessments were due, not the date of the Commissioner's order directing petitioners to pay the assessments"].) The trial court properly calculated prejudgment interest from the date Allied paid $2.5 million.

### DISPOSITION

The order is affirmed. Allied shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION.


                                   TANGEMAN, J.

We concur:


GILBERT, P. J.                              YEGAN, J.

11

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Weintraub Tobin Chediak Coleman Grodin, Andrew M. Gilford and Jessica R. Corpuz, for Plaintiff, Cross-defendant and Appellant Santa Clara Waste Water Company and Cross-defendant and Appellant Green Compass Environmental Solutions, LLC.

Cozen O'Connor, Maria Louise Cousineau; McCurdy & Fuller, Mary P. McCurdy and Rosemary J. Springer, for Defendant, Cross-complainant and Respondent.