[Civ. No. 7611. Fifth Dist. May 18, 1983.]

WESTINGHOUSE ELECTRIC CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE TRAVELERS, Real Party in Interest.

96

**COUNSEL**

Robinson, Palmer & Stanton, Oliver U. Robinson and William A. Bruce for Petitioners.

Clifford, Jenkins & Brown, Stephen T. Clifford, Borton, Petrini & Conron, John F. Petrini, John F. Stovall, Lynberg & Nelsen, Norman J. Watkins and Ric C. Ottaiano as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane and James E. Gallagher for Real Party in Interest.

OPINION

HAMLIN, J.—Petitioners, Westinghouse Electric Corporation and Westinghouse Electric Supply Company (Westinghouse) seek a writ of mandate directing respondent court to render its order pursuant to Code of Civil Procedure section 583, subdivision (b),[1] dismissing Kern County Superior Court case No. 147035, a complaint for damages entitled "The Travelers v. Westinghouse Electric Corporation et al." Amicus curiae briefs have been filed in support of the petition by Basler Electric Company, Sprague Electric Company, Procon, Inc. and the Signal Companies, Inc. (Basler, Sprague, Procon/Signal), all of which companies were brought into the superior court action by way of cross-complaints for indemnity and contribution.

FACTS

Real party in interest, the Travelers (Travelers), filed its complaint for damages in the Kern County Superior Court on May 9, 1977. The complaint alleged that Travelers' assignor was utilizing a "capacitor trip device" which it had obtained from Westinghouse. During use, the device failed to trip the circuit breaker to the main motor control of the hydrocracker unit, causing damage to the equipment approximating $176,000 and damage resulting from loss of income (due to a work stoppage) of $129,000. Westinghouse answered the complaint on July 15, 1977. On July 17, 1978, Travelers filed its first at-issue memorandum, and the case was set for settlement conference on November 30, 1978. That settlement conference was continued at the request of Westinghouse to February 26, 1979, to permit Westinghouse to file a cross-complaint against Basler. Travelers agreed to a further continuance of the settlement conference to May 4, 1979, and on that date, the trial was continued by stipulation of the parties to February 25, 1980. Some of the continuing activity occurring during this period is discussed below.

In July 1979 the parties were attempting to complete arrangements for an independent laboratory examination of the capacitor trip device. They agreed on July 31 and August 1, 1979, for such examination, but those arrangements had to be canceled because of a strike at the Westinghouse plant.

---

[1]All statutory references are to the Code of Civil Procedure.

On November 30, 1979, Basler cross-complained against Sprague, and on December 11, 1979, Travelers stipulated that Westinghouse could amend its cross-complaint to bring in other parties, including Sprague and Procon/Signal. On December 28, 1979, Travelers agreed to a continuance of the February 25, 1980, trial date in view of the pending joinder of additional parties by way of cross-complaint, and Travelers requested that a new trial date be agreed upon as soon as possible. Then Travelers contacted the county clerk for a new trial date and was advised that the trial could be reset by stipulation after May 4, 1980.

Travelers filed its second at-issue memorandum on July 21, 1980; and on September 12, 1980, the county clerk advised Travelers the matter was not at issue because there was no answer to an amended cross-complaint.

Following denial of certain motions to strike made by Westinghouse and Basler, Travelers attempted to clarify the clerk's position that the case was not at issue. The clarification prompted Travelers to circulate, on about April 10, 1981, a stipulation to all parties that the case was at issue. That stipulation was signed by the attorney for Sprague on June 29, 1981, by Westinghouse and Basler on July 1, 1981, and by Procon/Signal on July 9, 1981. No explanation was offered by defendants to explain the three-month delay in signing this stipulation. On July 17, 1981, Travelers forwarded that stipulation to the county clerk requesting that the matter be placed on the civil active list; however, the county clerk advised that a new at-issue memorandum would be required. Travelers filed a new at-issue memorandum on August 5, 1981.

Despite the stipulation of July 1981, in November Travelers received a notice from Procon/Signal that they were circulating a stipulation to permit them to file a cross-complaint against Westinghouse, Basler and Sprague. All parties, including Westinghouse, had agreed to sign that stipulation. Travelers did not receive the stipulation until February 9, 1982, and at that time signed the stipulation and forwarded it to Procon/Signal. By then, Sprague had already answered that cross-complaint, and Basler answered the Procon/Signal cross-complaint on March 10, 1982. Within five days thereafter, Travelers received a copy of Westinghouse's answer to the Procon/Signal cross-complaint and a copy of the Sprague answer. On March 24, 1982, Travelers filed a fourth at-issue memorandum. A settlement conference was scheduled for August 2, 1982.

On May 28, 1982, the five years within which Travelers was statutorily required to bring the case to trial pursuant to section 583, subdivision (b), expired. (This date included an additional 19 days, representing time in June 1978 when the case was out of the superior court jurisdiction because of a pending appeal.)

Before the settlement conference scheduled on August 2, 1982, all parties submitted settlement conference statements. Westinghouse's statement included an estimate that discovery would take an additional 60 to 90 days to complete. At the settlement conference, all parties became aware that the five-year period had expired some two months previously. Thereafter, Westinghouse filed a notice of motion to dismiss for failure to prosecute, pursuant to section 583, subdivision (b). In due course the motion was heard and denied. The instant petition followed, challenging the decision of respondent court as unreasonable, arbitrary and a prejudicial abuse of discretion in that section 583, subdivision (b), imposes a mandatory legal duty upon respondent court to dismiss the action once the five-year statute has expired. Incident to the filing of that petition, this court stayed the commencement of trial during the pendency of this proceeding or until further order of this court.

■ Initially, we note that mandamus is available to review the denial of a motion to dismiss made pursuant to section 583, subdivision (b). In *McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 530 [105 Cal.Rptr. 330, 503 P.2d 1338], the Supreme Court stated: "Preliminarily we note that since no direct appeal lies from the denial of a motion to dismiss, an appeal from the judgment after a trial is an inadequate remedy when the motion is meritorious. Either a writ of mandate to compel dismissal or a writ of prohibition to restrain the trial is a proper remedy to enforce the trial court's duty to dismiss pursuant to section 583, subdivision (b). [Citations omitted.]"

■ Because the duties of a court are primarily judicial in nature, requiring some exercise of discretion (as opposed to purely ministerial duties), and since the exercise of discretion cannot be controlled, mandamus must usually issue against the lower court on the basis of controlling abuse of discretion or compelling the exercise of discretion in the first instance. (Cal. Civil Writs (Cont. Ed.Bar 1970) § 5.28, p. 82.)

Our Supreme Court defined abuse of judicial discretion in *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13], as follows. "Mandate lies to control judicial discretion when that discretion has been abused. [Citations.] 'In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.]"

This definition has been consistently followed by the Courts of Appeal (see, e.g., *Bakkebo* v. *Municipal Court* (1981) 124 Cal.App.3d 229 [177 Cal.Rptr. 239]; *Louie Queriolo Trucking, Inc.* v. *Superior Court* (1967) 252 Cal.App.2d 194 [60 Cal.Rptr. 389]). The Third District Court of Appeal has added that, "[a]buse of discretion is arbitrary determination, capriciousness or 'whimsical thinking.'" (*City of Fresno* v. *California Highway Com.* (1981) 118 Cal. App.3d 687, 700 [173 Cal.Rptr. 671].)

## Discussion

Section 583, subdivision (b), provides: "(b) Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended."

The facts stated above are not in dispute. All parties—Westinghouse, Travelers, and all amici—agree that the five years within which Travelers could bring its complaint for damages to trial expired on May 28, 1982. Counsel for Travelers acknowledged he mistakenly believed the five years would not expire until the spring of 1983, a mistake of one year. For that reason, Travelers failed to move to specially set this case for trial between the time of filing its fourth and final at-issue memorandum and the expiration of the five-year period. By its decision, in addition to certain factual findings, the trial court found (1) that nearly all the delay in the case was either at the request of the defendants (including cross-defendants) or for the benefit of the defendants; (2) that the delay was not due to the unreasonable conduct of Travelers; and (3) that no prejudice inured to the defendants as a result of the delay. Based on these findings, the trial court denied petitioner's motion to dismiss and ordered that the case be tried on its merits. It is this decision which Westinghouse contends constituted an abuse of discretion by the trial court. We disagree.

### Did the Trial Court Abuse Its Discretion?

We begin our consideration of whether the trial court abused its discretion in denying the motion to dismiss pursuant to section 583, subdivision (b), with a review of the Supreme Court's decision in *Crown Coach Corp.* v. *Superior Court* (1972) 8 Cal.3d 540 [105 Cal.Rptr. 339, 503 P.2d 1347]. In that case, the Supreme Court discussed both the rationale for sections 581a and 583 and the state of the law as it existed at that time. The pertinent portions of that discussion are as follows:

"The dismissal statutes, like statutes of limitation, 'promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed. The statutes also protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time.' (*General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 91 [52 Cal.Rptr. 460, 416 P.2d 492].) . . .

"Nevertheless, over the years, this court and the Courts of Appeal have established decisionally certain implied exceptions where it would be impossi-

ble, impracticable or futile due to causes beyond a party's control to bring an action to trial during the five-year period. [Citations.] 'Whether it is impossible, impracticable or futile to proceed to trial must be determined in the light of the circumstances in each case. [Citations.]' (*Woley* v. *Turkus* [(1958)] 51 Cal.2d 402, 407 [334 P.2d 12]; [additional citations omitted].)

" . . . . . . . . . . . . . . . . . . . . . .

"A broad range of factors has been recognized as giving rise to impossibility, impracticability or futility in proceeding to trial within the five-year period. On the one hand there is the policy that the law favors disposing of litigation on the merits rather than on procedural grounds (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]); on the other, there is the burden imposed on the plaintiff of exercising diligence in proceeding to trial. (*St. Louis-San Francisco Ry. Co.* v. *Superior Court* (1969) 276 Cal.App.2d 762, 768 [81 Cal.Rptr. 705]; *Price* v. *Grayson* (1969) 276 Cal.App.2d 50, 55 [80 Cal.Rptr. 602].)

" 'The net effect of the decisions appears to be that no implied exceptions will be created, and no excuses for noncompliance with C.C.P. 583 will be accepted, unless they may fairly be said to make a trial impracticable.' (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 94, p. 2755.) It is settled that the implied exceptions to the five-year period prescribed by section 583 do not contemplate 'that time consumed by the delay caused by ordinary incidents of proceedings like disposition of demurrer, amendment of pleadings and the normal time of waiting for a place on the court's calendar or securing a jury trial is to be excluded from a computation of the five-year period. [Citation.]' [Citations.] '[T]he duty rests upon a plaintiff at every stage of the proceedings to use due diligence to expedite his case to a final determination.' [Citations.]" (*Crown Coach Corp.* v. *Superior Court, supra,* 8 Cal.3d at pp. 546-548, fns. omitted.)

Since the date of that decision, several important developments in the law have occurred. The first is the Supreme Court's decision in *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829]. There the court considered the standards to be applied in a motion to dismiss pursuant to section 581a.[2] The court recognized that existing case law has already

---

[2]Section 581a, subdivision (a), provides: "(a) No action heretofore or hereafter commenced by complaint shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced shall be dismissed by the court in which the action shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, unless the summons on the complaint is served and return made within three years after the commencement of the action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a general appearance in the action."

created implied exceptions to the apparently mandatory language of section 581a, which parallel similar implied exceptions to mandatory language in section 583, subdivision (b). The court noted that early appellate decisions excused compliance with the statutory requirements if compliance was "impossible for jurisdictional or other reasons." (*Id.*, at p. 719.) "This 'impossibility' exception was later extended to cases in which compliance was either 'impracticable' or 'futile.' " (*Ibid.*, citations omitted.) The opinion pointed out that appellate courts have similarly acknowledged that the purpose of the statutory time limitations is to assure that the plaintiff uses "reasonable diligence" in the prosecution of his lawsuit. The court then stated: "The statute sets forth the three-year limitation period which must be complied with unless plaintiff shows that the greater-than-three-year delay was not due to his or her unreasonable conduct. Thus in effect, the statute operates as a rebuttable presumption: if plaintiff fails to serve and return summons on a defendant within three years of the commencement of the action, plaintiff may be presumed to have failed to use reasonable diligence. This presumption may be overcome by plaintiff, who bears the burden of proving that he falls within an implied exception to section 581a. [Citations.]" (*Hocharian* v. *Superior Court, supra,* 28 Cal.3d at p. 722, fn. omitted.)

In reaching its decision in *Hocharian, supra,* the court relied upon its earlier statement of policy in *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]: "Although a defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation, the policy is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds. [Citations.]"

In *Hocharian, supra,* the Supreme Court remanded the case to the trial court for determination of whether plaintiff had in fact exercised reasonable diligence. In doing so, the court stated that, assuming plaintiff was able to sustain his burden of showing reasonable diligence in attempting to effect service, the court was still required to consider any showing of prejudice made by the defendant. These interests would then be balanced, and even a reasonably diligent plaintiff might face dismissal if a defendant showed that he had been prejudiced by the delay.

Following *Hocharian,* several cases emphasized "due diligence" in excusing compliance with section 583, subdivision (b). (See, e.g., *Bennett* v. *Bennett Cement Contractors, Inc.* (1981) 125 Cal.App.3d 673 [178 Cal.Rptr. 633]; *Preston* v. *Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402 [178 Cal.Rptr. 882].)

Thereafter, the second major development in this field of law occurred. In 1982 the Legislature amended section 581a by the addition of subdivision (f),

which provides: "(f) Except as provided in this section, the provisions of this section are mandatory and are not excusable, and the times within which acts are to be done are jurisdictional. Compliance may be excused only for either of the following reasons:

"(1) Where the defendant or cross-defendant is estopped to complain.

"(2) Where it would be impossible, impracticable, or futile to comply due to causes beyond a party's control. However, failure to discover relevant facts or evidence shall not excuse compliance."

By the addition of subdivision (f), the Legislature has specifically stated that for purposes of that section impossibility, impracticability or futility must be due to causes beyond a party's control. Additionally, it has stated that the time limitation therein is jurisdictional. Both of these statements are contrary to the Supreme Court's decision in *Hocharian.* (See fns. 3 and 5 in the court's opinion in *Hocharian* v. *Superior Court, supra,* 28 Cal.3d at pp. 721 and 722.) Certainly this amendment indicates the Legislature responded swiftly and negatively to the expansion of the recognized exceptions to strict compliance with the time limitation for service of summons in section 581a. Thus it can be argued that *Hocharian* is, in the respects in which it was nullified by legislation, of questionable validity for purposes of analogy to section 583, subdivision (b). Contrariwise, it can just as logically be argued that the Legislature's failure to enact a similar amendment to section 583, subdivision (b), constitutes recognition that different policy questions are involved under the two sections. If a plaintiff can demonstrate reasonable diligence in prosecuting his case during the entire period it has been pending, we believe the legislative purpose of section 583, subdivision (b), has been served.

In any event, we do not rely on reasonable diligence as a separate and fourth implied exception to the mandatory time limits of section 583, subdivision (b). Rather, we believe reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability or futility. We note in support of that interpretation the Supreme Court's statement: "In applying any of these exceptions to a given factual situation, the critical question is whether a plaintiff used reasonable diligence in prosecuting his or her case. The particular factual context or cause of the noncompliance should not be determinative; rather, the primary concern must be the nature of the plaintiff's conduct." (*Hocharian* v. *Superior Court, supra,* 28 Cal.3d at p. 722, fns. omitted.)

We believe the appropriateness of our approach is illustrated by the following example. Under some circumstances it may clearly be impracticable to bring a case to trial because substantial discovery remains to be completed at or near

the end of the five-year period. The necessity for further discovery may be due to dilatoriness on the part of the plaintiff or on the part of defendant. If plaintiff has completed all of his discovery and is or has been ready to proceed to trial and the record shows that defendant has failed to vigorously pursue discovery, the nonreadiness of the case is due to defendant. In that situation, impracticability would constitute an excuse for noncompliance if plaintiff's conduct is otherwise reasonable. However, had plaintiff been the dilatory party, mere impracticability is not an excuse, since the impracticability arises from plaintiff's own fault. We believe the above examples and analysis are particularly pertinent to the instant case. ■■■ They support the trial court's determination that, notwithstanding Travelers' due diligence throughout the five-year period, it was impracticable to bring this case to trial within that period.

■ We reject Westinghouse's contention that Travelers' admitted inadvertence in missing the statutory deadline and its consequent failure to move to have this case specially set for trial within the five-year period constitutes an absolute and unavoidable bar to a trial on the merits. Rather, we believe impracticability depends upon *all the circumstances*. This is complicated litigation involving potential liability in excess of $300,000. Some 19 months after the filing of the complaint and after Travelers had filed its first at-issue memorandum and the case was set for trial, Westinghouse moved for and was granted permission to file a cross-complaint against the manufacturer of the capacitor trip device allegedly responsible for the economic loss. The initial cross-defendant filed a cross-complaint against others who in turn cross-complained against one another. The delays occasioned by these cross-complaints were extensive. Travelers consented not only to the filing of the cross-complaints but removal of the case from the civil active list in order to accommodate Westinghouse and the other cross-defendants/complainants.

■ It is certainly true, as stated in *Crown Coach Corp., supra,* 8 Cal.3d at page 548, "that the implied exceptions to the five-year period prescribed by section 583 do not contemplate 'that time consumed by the delay caused by *ordinary* incidents of proceedings . . . is to be excluded from a computation of the five-year period. [Citation.]'" (Italics added.) However, that does not mean that delays such as those encountered in this case are not properly considered part of the circumstances which the court must assess in judging the reasonableness of the plaintiff's conduct and the impracticability which resulted. Specifically, in the instant case the delay between the filing of the lawsuit in May 1977 and the final joining of all parties by the filing of cross-defendant Sprague's answer to Procon/Signal's cross-complaint in March 1982 was a delay of four years and ten months. Westinghouse itself stipulated as late as January 19, 1982, that Procon/Signal might file a cross-complaint against Westinghouse, Basler and Sprague. We do not consider such a delay to have been the responsibility of Travelers or an "ordinary incident" of proceedings.

This is especially true in view of Travelers' repeated consents to the filing of cross-complaints for no other reason appearing on the record except courtesy and the avoidance of motions to compel such filings (which could easily have been denied as given trial dates approached).

Additionally, in determining impracticability it is significant that at the time of the motion to dismiss, substantial discovery remained to be completed on the part of Westinghouse and at least two and possibly all the cross-defendants/complainants. The settlement conference statement which Westinghouse prepared for the August 2, 1982, settlement conference (after the 5-year period had expired) indicated an additional 60 to 90 days were required to complete discovery. Notwithstanding this admitted state of affairs, Westinghouse argues that Travelers' inadvertence in mistakenly believing it had additional time and therefore failing to move to specially set shows in itself a lack of diligence. The reasonableness of Travelers' conduct in this respect is not to be determined in a vacuum but only insofar as it bears upon the impracticability of bringing this case to trial within the five years.

Admittedly, under most circumstances the trial court would abuse its discretion in denying a motion to dismiss under section 583, subdivision (b), where the plaintiff had failed to bring a motion to specially set under California Rules of Court, rule 225. (See, e.g., *State of California* v. *Superior Court* (1979) 98 Cal.App.3d 643 [159 Cal.Rptr. 650].) That is because such a motion to specially set would be successful and meaningful in most cases. (See, e.g., *Weeks* v. *Roberts* (1968) 68 Cal.2d 802 [69 Cal.Rptr. 305, 442 P.2d 361] and *Vogelsang* v. *Owl Trucking Co.* (1974) 40 Cal.App.3d 1068 [115 Cal.Rptr. 666] [28 and 46 days prior to expiration of the 5-year period, respectively].) However, the difference in this case is that the trial court could reasonably have inferred that, even if the motion to specially set had been granted, it would not have resulted in an earlier trial date but merely in compelling Westinghouse and the other parties to stipulate in writing to waive the time provisions of section 583, subdivision (b). That was a reasonable inference notwithstanding the possibility of severance to protect the rights of cross-complainants and cross-defendants while still assuring that Travelers and Westinghouse could proceed to trial within the five years. Here, the facts indicate that trial was equally impracticable as to Westinghouse.

But even if we assume that Westinghouse would have been willing to proceed to trial within the five-year period without the discovery it represented as necessary in its settlement conference statement, impracticability still existed. It existed because of the excessive or unreasonable difficulty or expense involved in severance. Travelers recognized this in not insisting on possible severance as a condition to granting the numerous motions to file cross-complaints and resulting motions to continue trial dates which had been set. In regard to

severance, this case is similar to *Brunzell Const. Co.* v. *Wagner* (1970) 2 Cal.3d 545 [86 Cal.Rptr. 297, 468 P.2d 553]. There, a plaintiff had sued on a contract with Harrah's Club which obligated plaintiff to construct a casino. Plaintiff had joined the architects and soil engineers as codefendants with the owner and the surety. Due to numerous pending appeals involving defendant Harrah's only, the five-year period expired, and the architects and soil engineers who had not been parties to the pending appeals moved to dismiss pursuant to section 583, subdivision (b). The Supreme Court held that the trial court had erred in concluding that as long as the causes of action against the multiple defendants were severable—i.e., as long as it was theoretically *possible* for the plaintiff to proceed to trial against the architects and soil engineers—the impracticable and futile exceptions to section 583, subdivision (b), did not apply. The court stated: "In instances in which proceeding to trial against one defendant becomes impossible or impracticable, the fact that a plaintiff could have severed his causes of action and proceeded separately against a codefendant is of course one important—indeed, the threshold—factor to be considered in determining whether it was impossible or impracticable for him to proceed to trial against that codefendant within the statutory period. *Pacific Greyhound* [*Pacific Greyhound Lines* v. *Superior Court* (1946) 28 Cal.2d 61 (168 P.2d 665)] and *Westphal* [*Westphal* v. *Westphal* (1943) 61 Cal.App.2d 544 (143 P.2d 405)] illustrate, however, that the availability of severance is not solely determinative in every instance. [Citations.] In many situations in which it is impossible or impracticable to proceed against one codefendant it may be impracticable, in terms of the burden both to the parties and to judicial administrations as a whole, to proceed against other defendants in a separate suit. To require a plaintiff to sever causes of action against multiple defendants *whenever* it becomes impossible or impracticable to proceed against one defendant within the five-year period would be to require unproductive duplication of effort, compel the incurrence of excessive expense, and generally undermine all the policies served by modern theories of consolidation in a substantial number of cases. As we noted in *General Motors Corp.* v. *Superior Court* [(1966)] 65 Cal.2d 88, 91, the purposes behind section 583 and the modern concept of consolidation are not dissimilar, and thus we should not mechanically apply section 583 so as to abrogate many of the advances achieved by the liberalization of the rules of consolidation of actions and parties." (*Brunzell* v. *Superior Court, supra,* 2 Cal.3d at pp. 553-554, fns. omitted; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 106, p. 2770.)

█ Finally, it is true that plaintiff bears the burden of moving a case forward to trial and keeping track of all applicable dates (see *Bolsinger* v. *Marr* (1969) 1 Cal.App.3d 267 [81 Cal.Rptr. 498]; *State of California* v. *Superior Court* (1979) 98 Cal.App.3d 643 [159 Cal.Rptr. 650]; *Singelyn* v. *Superior Court* (1976) 62 Cal.App.3d 972 [133 Cal.Rptr. 486]). Travelers' failure to do so admittedly constitutes inadvertence. Inadvertence presupposes a mistake or

negligence of one degree or another, either excusable or inexcusable under the particular facts of the case. Relief from mistake, inadvertence or excusable neglect in a variety of situations is available under section 473. In *Robinson* v. *Varela* (1977) 67 Cal.App.3d 611, 615-616 [136 Cal.Rptr. 783], the court considered the admitted neglect of an attorney which had resulted in the entry of a default. The court stated: "An evaluation of an attorney's neglect under section 473 involves a consideration of the reasonableness of the defaulting attorney's conduct (see *Dockter* v. *City of Santa Ana,* 261 Cal.App.2d 69, 75 . . .) *and* of the conduct of the attorney taking the default (e.g., *Smith* v. *Los Angeles Bookbinders' Union,* 133 Cal.App.2d 486 . . .)." In devoting regular attention to the instant case and avoiding any long periods of inactivity, the reasonableness of Travelers' attorneys' conduct in this case is clear.

If it is appropriate to consider the conduct of the attorney taking the default in evaluating the negligence of an attorney seeking relief from the default, the conduct of the attorney seeking dismissal is equally relevant in this case. Here Westinghouse's attorney resorted to stipulations from Travelers' attorney to continue settlement conferences and trial dates, to conduct independent laboratory examinations and to amend its cross-complaint to bring in additional parties. In addition, as indicated above, Westinghouse joined in a written stipulation approximately four months before the five-year period expired to permit Procon/Signal to file a cross-complaint against Westinghouse, Basler and Sprague. We regard such a stipulation as inconsistent with adherence to the five-year limit for getting to trial. This seems particularly true in that the stipulation to permit another cross-complaint at this stage of the proceedings vitiated the stipulation Travelers had earlier circulated that the case was at issue as to all parties in order to file its third at-issue memorandum in August 1981.

While Westinghouse's course of action was not intended to mislead Travelers' attorney or to lull him into a false sense of security, it may reasonably be inferred to have had that effect. (See, for example, *Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431 [96 Cal.Rptr. 571, 487 P.2d 1211].) There the court concluded that defendant's motion for dismissal under section 581a was barred by estoppel. Defendant's request for an extension of time to make an appearance in response to the defective summons was the basis of the estoppel. By requesting and obtaining the extension, defendant avoided any of the actions which would have alerted plaintiff to the defects in service, e.g., making a general appearance, moving to quash service of summons, or permitting a default to be taken (in which case the clerk would have refused to enter the default because of the defect in service, thus alerting plaintiff to the problem). "Defendant's conduct in the present case lulled plaintiff into such a ' "false sense of security," ' and probably prevented plaintiff from discovering her error and effecting valid service within the statutory period." (*Tresway Aero, Inc.* v. *Superior Court, supra,* at p. 442.)

The trial court did not find any ground for estoppel in this case, and we do not base our decision on the existence of any such ground. We do, however, consider Westinghouse's conduct throughout the five-year period of this litigation to have been such that we conclude the negligence of Travelers' attorney in failing to move to specially set this case before the end of the five-year period was excusable. Additionally, we believe that conduct of all parties was properly considered by the trial judge to support his implied finding that it was impracticable to get this case to trial within the five-year period.

Finally, we attach considerable significance to the trial court's finding that there was no prejudice to any of the other parties involved in this litigation which resulted from the delay in bringing the matter to trial, notwithstanding the fact that prejudice is presumed. (*Breckenridge* v. *Mason* (1967) 256 Cal.App.2d 121 [64 Cal.Rptr. 201].) Because that presumption is not declared by law to be conclusive, it may be rebutted. (Evid. Code, § 620.) The facts of the instant case sustain the trial court's finding that the presumption of prejudice was rebutted. Travelers assured the regular progression of the litigation through the usual steps to the best of its ability. It cannot be responsible for the fact that the parties were engaged in ongoing discovery at the time the five years expired. Extending the time before trial to permit the other parties to file additional cross-complaints and to complete their discovery cannot be deemed to be prejudicial.

The petition for writ of mandate is therefore denied. The alternate writ is discharged, and the temporary stay order affecting the trial of the underlying action is dissolved.

Franson, Acting P. J., and Andreen, J., concurred.