[No. B036489. Second Dist., Div. Seven. Feb. 24, 1989.]

VALERIE BACCUS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
RALEIGH IRBY et al., Real Parties in Interest.

COUNSEL

Wilson, Becks & Pyfrom, Eskel H. Solomon and Paula C. Gentile for Petitioners.

No appearance for Respondent.

Stuart D. Meyers for Real Parties in Interest.

OPINION

LILLIE, P. J.—By petition for writ of mandate, petitioners, sued by real parties in interest for injuries sustained in a 1982 automobile accident, challenge an order of the superior court denying a motion to dismiss real parties' action for failure to bring it to trial within five years. (Code Civ. Proc., §§ 583.310, 583.340, 583.360.) We issued alternative writ of mandate and order to show cause why the order of July 14, 1988, denying the motion to dismiss real parties' action should not be vacated and a new and different order dismissing the action be entered. We also issued an order staying the trial in the superior court pending further order of this court. Hearing has been had thereon. We conclude the petition for writ of mandate should be granted.

FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 1983, real parties in interest, through their attorney, filed, but did not serve, a complaint against petitioners for damages arising out of an automobile accident on May 4, 1982. In December 1984 real parties, through a second attorney, filed and served petitioners with an amended complaint. In April 1986 almost three years after the action was filed, real parties retained a third attorney, who, in July 1986 moved to substitute himself as attorney of record for real parties and to have the matter ordered to arbitration. Real parties' motion also sought sanctions and attorney's fees against their second attorney, claiming that he failed on numerous occasions to sign a substitution of attorney, thus necessitating a motion for substitution. On September 12, 1986, the court granted real parties' motions. The matter was arbitrated on February 25, 1987 and the arbitrator's award was entered on March 1, 1987. On March 10, 1987, real parties requested a trial de novo and in late April 1987 the court set a trial date of June 20, 1988, a date over a year later and 49 days after the expiration of the 5-year limitation period. (Code Civ. Proc., § 583.310.) Neither at that

time nor at any time prior to the trial date did real parties alert the court to the fact that trial had been set beyond the five-year period.

When the matter came on for trial on June 20, 1988, the court ordered the trial off calendar and set a hearing for July 14, 1988, to show cause why the court should not, on its own motion, enter an order dismissing the action. In their memorandum in opposition to the court's motion, real parties urged the court not to dismiss their case and argued that they were entitled to extend the statutory period for the following reasons: (1) On two separate occasions they granted extensions to petitioners—in October 1986 granting a month's extension to respond to interrogatories, and in January 1987 granting a 48-day continuance of the arbitration hearing date. (2) The "intransigence and sloth" of their first two attorneys made it impossible and futile for them to bring the case to trial during their relationships with those attorneys, i.e., during the first three years the case was pending.

After hearing, the court denied its motion to dismiss the action, stating that "[i]t's just weighing the entire picture, I think. And as counsel pointed out, it's discretionary with me. [¶] I'm going to deny the motion. I think it's a close one. . . . But I think, really, in the interest of basic justice—. . . ."

Petitioners filed timely petition for writ of mandate directing respondent superior court to vacate its order of denial and to enter an order granting its motion for dismissal of the action.

## I

### STANDARD OF REVIEW

■ "[M]andamus is available to review the denial of a motion to dismiss made pursuant to [former Code of Civil Procedure] section 583, subdivision (b)." (*Westinghouse Electric Corp.* v. *Superior Court* (1983) 143 Cal.App.3d 95, 101 [191 Cal.Rptr. 549].) ■ "As in the case of a section 583 [, subdivision] (a) dismissal, a trial court's ruling on a motion to dismiss under [former] section 583(b) [see now Code Civ. Proc., § 583.310] will be disturbed only upon a showing of a manifest abuse of discretion. [Citation.]" (*Martin* v. *K & K Properties, Inc.* (1987) 188 Cal.App.3d 1559, 1567 [234 Cal.Rptr. 161].)

## II

### MANDATORY DISMISSAL

■ At the outset, petitioners contend that because the trial court referred to the "entire picture," of the case, it mistakenly applied the law for discretionary dismissals (Code Civ. Proc., § 583.410 et seq.) rather than

that for a mandatory dismissal pursuant to Code of Civil Procedure section 583.360. On this record, nothing suggests that either the parties or the court were relying on the discretionary dismissal statutes rather than on the mandatory dismissal statutes. We interpret the court's reference to the "entire picture" to be an application of the statutory exclusion whereby the time during which it is "impossible, impracticable or futile" to bring the action to trial is excluded in computing the five-year period. (Code Civ. Proc., § 583.340, subd. (c).)

 Petitioners' primary contention is that dismissal is mandated by statute because real parties failed to make a showing of impossibility, impracticability, or futility. In the trial court, and in their brief filed in this court, real parties argue that it was impossible and impracticable for them to bring their case to trial for three and one-third years because their first two counsel did not exert any efforts on their behalf. These facts, they urge, constitute sufficient statutory grounds to extend the five-year statute for three and one-third years.

"An action shall be brought to trial within five years after the action is commenced against the defendant." (Code Civ. Proc., § 583.310.) The five-year period is tolled when it is "impossible, impracticable or futile" to comply therewith. (Code Civ. Proc., § 583.340, subd. (c).) Subdivision (c) of section 583.340 codifies the case law "impossible, impractical, or futile" standard, and must be interpreted liberally, consistent with the policy favoring trial on the merits. (See Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 583.340 (1988 pocket supp.) p. 100.) " 'What is impossible, impracticable or futile must be determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] *The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.*' " (*Hill* v. *Bingham* (1986) 181 Cal.App.3d 1, 6 [225 Cal.Rptr. 905], italics in original.) Reasonable diligence places on a plaintiff the affirmative duty to make every reasonable effort to bring a case to trial within five years, even during the last month of its statutory life. (*Id.,* at p. 10.)

 Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions. (*Standard Oil Co.* v. *Superior Court* (1976) 61 Cal.App.3d 852, 857 [132 Cal.Rptr. 761].) Moreover, reasonable diligence alone is not sufficient to protect a party from an involuntary dismissal; rather, reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability, or

futility. (*Lazelle* v. *Lovelady* (1985) 171 Cal.App.3d 34, 39 [217 Cal.Rptr. 145].)

■ As a general rule an attorney's inexcusable neglect is chargeable to the client. (*Freedman* v. *Pacific Gas & Electric Co.* (1987) 196 Cal.App.3d 696, 705 [242 Cal.Rptr. 8].) Excepted from the rule are those instances in which the attorney's neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence; this exception is premised upon the concept the attorney's conduct, in effect, obliterates the existence of the attorney-client relationship. (*Ibid.*) However, delay alone does not constitute client abandonment or positive misconduct. (*Id.,* at p. 707.)

■ In arguing that the intransigence and sloth of their first two attorneys constitute sufficient grounds to toll the five-year period under Code of Civil Procedure section 583.340, subdivision (c), real parties in essence argue that they should not be charged with those attorneys' delay in moving the case to trial. Real parties contend that willful misconduct is shown by the fact that their second attorney was sanctioned $500 by the court, pursuant to Code of Civil Procedure section 128.5, for failing to sign a substitution of attorney. Under the applicable principles of law, real parties have not made a sufficient showing that they were "abandoned" in the sense that their attorneys were unavailable to them or failed to communicate with them, or that their attorneys were guilty of positive misconduct that made it impossible to prosecute the case. Thus, on the record before us, it would have been an abuse of discretion for the trial court to conclude the five-year period should be tolled during the time real parties were represented by their first two attorneys.

■ We also conclude that the two extensions granted petitioners by real parties' third attorney provide no basis to toll the five-year period inasmuch as such extensions are ordinary incidents of litigation and the power to grant or deny such extensions rested entirely in the hands of real parties. Thus, it cannot be said that such matters were beyond real parties' control, rendering it impossible to comply with the five-year period. Petitioners claim that the trial court relied upon the extensions in erroneously concluding they should be estopped from asserting the five-year limit, but no argument of estoppel was made by real parties and our record does not support the claim that the court relied upon any such theory in denying the motion to dismiss. ■ ■ We conclude that, as to the delay caused by real parties' former attorneys and by their grant of extensions, real parties have not met the burden of establishing in the trial court, by clear and convincing proof, the existence of either impossibility, impracticability or futility of bringing the matter to trial within five years. (See *Central*

*Mutual Ins. Co.* v. *Executive Motor Home Sales, Inc.* (1983) 143 Cal.App.3d 791, 796 [192 Cal.Rptr. 169].)

 Although real parties' arguments focus on events relatively early in the course of their action, a determination of due diligence requires an examination of the circumstances existing throughout the five-year period. (*Lazelle* v. *Lovelady, supra,* 171 Cal.App.3d at p. 39.) Moreover, they may not rely on delay caused early in the proceedings which hardly could have misled them as to the need to act diligently as the end of the five-year period approached. (See, e.g., *Smith* v. *El Centro Lodge No. 1325* (1969) 271 Cal.App.2d 713, 717 [76 Cal.Rptr. 629].) We must thus consider the circumstances after the arbitration to determine whether *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216] requires real parties to exercise reasonable diligence after they requested a trial de novo.

## III

### The Moran Decision

In *Moran* v. *Superior Court, supra,* 35 Cal.3d 229, the action was ordered into arbitration with 41 days of the original 5-year period remaining. After an award was filed in plaintiff's favor, defendant Moran filed a request for trial de novo. Plaintiff then contacted the clerk's office and requested the case be reset for trial and given the same position on the trial calendar as it had before arbitration. The clerk assured plaintiff that the case would be reset within the five-year period. Although follow-up calls produced the same assurances by the clerk's office, the file was sent to the basement for storage and the five-year period elapsed.

The court in *Moran* held that the denial of dismissal was correct on two independent grounds. The first ground was that plaintiff's conduct was sufficiently diligent to warrant application of the impossibility exception to excuse her failure to bring her case to trial within the five-year limit. (*Moran, supra,* 35 Cal.3d at p. 239.) The court found that plaintiff's overall conduct during the five-year period reflects her reasonable diligence in prosecuting the case, and stated that "the impossibility of [plaintiff] bringing her case to trial at the very end of this period due to the court's failure to reschedule it warrants invoking the implied exception to mandatory dismissal . . . ." (*Id.,* at p. 240.)

 "The second ground stated in *Moran* for upholding the trial court's refusal to dismiss is that by force of former section 1141.20 (now § 1141.20, subd. (b)), trial courts have a sua sponte duty to calendar postarbitration trials ' . . . insofar as possible, so that the trial shall be given the

same place on the active civil list as it had prior to arbitration, or shall receive civil priority on the next setting calendar.' [Citations.] Since the trial court alone has the power to calendar trials, plaintiffs are entitled to presume that the court will perform this duty. Therefore, the five-year statute is tolled until the postarbitration trial date set by the trial court." (*Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1031 [250 Cal.Rptr. 384].)

 In the instant case, the five-year period was not tolled under the first alternative ground of *Moran* in that real parties failed to make a showing of impossibility, impracticability, or futility. Real parties here requested a trial de novo about 13 months before the expiration of the 5-year period. The court promptly assigned a trial date, but it was 49 days beyond the expiration of the 5-year period. Real parties never alerted the court to the five-year deadline. They thus did not comply with their duty to call to the attention of the court the necessity for setting the trial for a time within the period fixed by statute. (*Hill* v. *Bingham* (1986) 181 Cal.App.3d 1, 10 [225 Cal.Rptr. 905].) They again manifested a lack of diligence by acquiescing for over a year in a trial date set beyond the five-year deadline. (*Ibid.*)

 There is a split of case authority in the courts of appeal as to whether *Moran*'s second alternative ground requires reasonable diligence on a plaintiff's part as a prerequisite to postarbitration tolling. Our decision in *Barna* v. *Passage 350 Canon* (1986) 186 Cal.App.3d 440 [230 Cal.Rptr. 764] holds that "under the tolling rule in *Moran*, the reasonable diligence of the plaintiff is placed in issue under the discretionary dismissal statutes . . . but not under the mandatory dismissal statute (§ 583.310)." (*Barna, supra,* 186 Cal.App.3d at p. 447.) This conclusion is supported by the observations that *Moran* does not explicitly refer to plaintiff's reasonable diligence when discussing the second ground for its decision and that former Code of Civil Procedure section 1141.20 is characterized by the *Moran* court as placing a sua sponte duty upon the trial court to recalendar a trial date to preserve plaintiff's position with respect to the five-year statute.

Another line of cases holds that *Moran* must be read in light of its facts and that notwithstanding a sua sponte duty to recalendar the trial date properly, the plaintiff must still exercise reasonable diligence under the circumstances. (*Sizemore* v. *Tri-City Lincoln Mercury, Inc.* (1987) 190 Cal.App.3d 84, 90 [235 Cal.Rptr. 243]; *Hill* v. *Bingham, supra,* 181 Cal.App.3d 1, 11-12; *Taylor* v. *Hayes* (1988) 199 Cal.App.3d 1407, 1411 [245 Cal.Rptr. 613]; *Berry* v. *Weitzman* (1988) 203 Cal.App.3d 351, 355-357 [249 Cal.Rptr. 816]; *Santa Monica Hospital Medical Center* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 1033-1036.)

The facts here are distinguishable from those in *Barna* v. *Passage 350 Canon, supra,* 186 Cal.App.3d 440 in which the facts are "strikingly simi-

lar" to those in *Moran.* (*Id.*, at p. 444.) In *Barna,* the plaintiff contacted the superior court clerk's office after defendants filed a request for trial de novo and requested the case be given the same position on the calendar it had before arbitration; plaintiff was informed she would be notified. The plaintiffs in both *Barna* and *Moran* were diligent in attempting to bring their cases to trial after arbitration. Because real parties in the instant case were not diligent, we deem the analysis in *Santa Monica Hospital Medical Center* v. *Superior Court, supra,* 203 Cal.App.3d 1026, 1033-1036 to control here. As pointed out by the court in *Santa Monica Hospital Medical Center,* an interpretation of the second *Moran* ground which requires plaintiff to meet the diligence standard does not render the two independent tolling rules duplicative. "Tolling under the 'impossible or impracticable' rule requires evaluation of plaintiff's reasonable diligence at all stages of the litigation. In contrast, tolling under the second *Moran* rule requires only that, after arbitration, plaintiff notify the trial court of the correct five-year limit. While the *Moran* plaintiff satisfied both diligence requirements, it is easy to conceive of cases where the plaintiff's conduct could qualify under only the second tolling rule." (*Id.,* at p. 1034.)

Like the court in *Santa Monica Hospital Medical Center,* we do not believe *Moran* intended to construe former Code of Civil Procedure section 1141.20 to effect a "total abrogation of the ongoing duty of plaintiffs to meet five-year deadlines by notifying trial courts of imminent five-year deadlines and requesting timely trial dates. Continuing that duty, in conjunction with requiring trial courts to set trials before known five-year deadlines, would better serve the fundamental public policy purpose of the mandatory dismissal statute. That purpose . . . is to ' "promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed . . . [and] to protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time." ' " (203 Cal.App.3d at p. 1035.)

 Accordingly, we conclude that real parties herein are not entitled to the tolling under the second *Moran* ground because our record is clear that they neither notified the court of the five-year deadline nor attempted to advance the trial date set beyond such deadline; and that the court abused its discretion in failing to dismiss the action.

IV

MINOR ANTWYNNE IRBY'S ACTION

 We reject real parties' unsupported contention that the minority status of real party Antwynne Irby precludes dismissal of her claims under Code of Civil Procedure section 352, subdivision (a). That section provides

in pertinent part that "(a) If a person entitled to bring an action . . . be, at the time the cause of action accrued, either: [¶] 1. Under the age of majority . . . [¶] the time of such disability is not a part of the time limited for the commencement of the action." On its face, the statute does not address the issue of dismissal of a minor's action, once timely begun, but only the issue of tolling of the time within which an action may be commenced. The other authorities cited by real parties do not support their contention that the minority status of Antwynne tolls the mandatory dismissal statutes.[1]

DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of July 14, 1988, denying the motion to dismiss case No. SWC 67593 and to enter a new and different order granting the motion. The order of this court of September 28, 1988, staying the trial shall remain in effect until this decision becomes final as to this court.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent. To my mind, the opinion Justice Thompson authored in *Barna* v. *Passage 350 Canon* (1986) 186 Cal.App.3d 440 [230 Cal.Rptr. 764] was the correct decision and, along with *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216], compels denial of this petition. Indeed, I think *Barna* represents the only responsible reading of the Supreme Court's opinion in *Moran*.

Lest we forget what the Supreme Court actually said in *Moran,* consider the following direct quotes which have not been filtered through the distorting prism of the *Santa Monica Hospital Medical Center* v. *Superior Court* ((1988) 203 Cal.App.3d 1026 [250 Cal.Rptr. 384]) opinion.

"The language of the arbitration statute . . . provides that, after the arbitrator's decision has been filed, a party who is not satisfied with the award must initiate the process which will bring the case to trial by making a timely request for a trial de novo. Once such a request has been made, this section requires that a case be *calendared* for trial in the order of priority it held before arbitration. Since the trial court alone has the power to order a matter placed upon its trial calendar, [Code of Civil Procedure] section 1141.20 imposes a duty upon the court *sua sponte* to recalendar the trial 'in the same place . . . it had prior to arbitration.' [Italics in original, fn. omitted.] *In compliance with this statutory mandate,* and in order to ensure that the plaintiff will retain the benefit of the amount of time remaining in the five-year period when the case went into arbitration, *that period will*

---

[1] We do note that a plaintiff's minority of age 17 at the time of filing a lawsuit has been held not to excuse her lack of diligence where she reached her majority before the expiration of the 5-year period. (*Taylor* v. *Hayes, supra,* 199 Cal.App.3d 1407, 1411-1412.)

*remain tolled until the new trial date* set by the court. [¶] . . .[Plaintiff] had a *right to assume that the court would perform its duty* so that her new trial date would stand in the same relation to the end of the five-year period as did her original trial date. [¶] . . . The time between the date the arbitration award is filed with the court and the date set for the new trial *is to be excluded* from calculation of the five-year period of section 583 [, subdivision] (b). . . . [¶] The trial court properly refused to dismiss [plaintiff's] action for two *independent* reasons. First, [plaintiff] had pursued her action with reasonable diligence . . . . Second, dismissal of [plaintiff's] action was premature because *the time from the filing of the arbitration award until the new trial date . . . should have been excluded* in calculating the five-year limit." (*Moran* v. *Superior Court, supra,* 35 Cal.3d at pp. 240-242, italics added.)

This language admits of no exceptions. The Supreme Court held the plaintiff discharges his duty when he makes "a timely request for a trial de novo." That is the only due diligence the Supreme Court requires of plaintiffs after a case has been arbitrated and there is no dispute plaintiff exhibited that due diligence in this case. From this point on, according to *Moran,* the responsibility to perform diligently shifts to the court. The statute "imposes a duty upon the court *sua sponte* to recalendar the trial" and "[the section 583, subdivision (b)] [hereafter section 583(b)] period will remain tolled until the new trial date set by the court." There is no suggestion in the Supreme Court opinion that the plaintiff must demonstrate diligence of any kind—after requesting the trial de novo in a timely fashion—to activate the tolling period or to keep it running. Rather the tolling is automatic and continues without further action by plaintiff from the time the plaintiff asks for a trial de novo until the new trial date the court sets in discharge of its sua sponte duty.

*Santa Monica Hospital Medical Center* v. *Superior Court, supra,* 203 Cal.App.3d 1026, and like cases represent nothing more nor less than creative evasions of this crystal clear holding—not dictum—issued only six years ago by the state's highest court. If intermediate appellate courts think the Supreme Court was wrong in announcing the rule it did in *Moran* there are legitimate, well-recognized ways of asking *the Supreme Court* to take a second look. (See, e.g., *In re Javier A.* (1984) 159 Cal.App.3d 913, 919 [206 Cal.Rptr. 386].) What another court of appeal did in *Santa Monica Hospital* is not one of those ways. That court merely rewrote *Moran* to suit its own policy preferences. It may have done so in an expectation its amended version would find acceptance with the current Supreme Court. But even if that is a sound guess about the present predilections of the Supreme Court, it is not a sound approach to prior decisions of the high court. Under established principles of stare decisis it simply is not appropriate for an intermediate appellate court to undertake on its own to rewrite existing

Supreme Court decisions to match what it perceives the current California Supreme Court might want. If there is to be a second look at *Moran* that second look is for the Supreme Court itself to take, not the intermediate appellate courts.

I am pleased to see the majority of this court has not rejected Justice Thompson's opinion in *Barna* outright and instead has elected to attempt to distinguish its facts from those of the instant case. At the same time, I regret the majority has turned away from Justice Thompson's accurate reading of the Supreme Court *holding* in *Moran*.

The facts of *Barna* may be distinguishable from the instant case, but those facts are not distinguishable in ways that have legal significance. Nearly every case can be differentiated in some way from any other. Even those that are "on all fours" with each other will not be "on all eights" or "on all sixteens." The question is whether they differ in legally significant ways, that is, ways that mean the rule as announced by the Supreme Court applies to one factual situation but not to the other. The rule announced in *Moran* was that if, after an arbitration a party requests a trial de novo, then the *court* has a sua sponte duty to set the trial date and *the 583(b) period tolls* until the date the court sets for that trial. In the instant case as in *Barna* the plaintiff requested a trial de novo. That is the only legally salient fact about the plaintiff's behavior to be found in the announced rule. Thus, in both *Barna* and the instant case logic dictates the same consequence must follow—the 583(b) period tolls until the trial date the trial court elected to fix.

The majority holds plaintiffs did not display "due diligence" because they did not alert the trial court to the fact the trial date it set was more than five years after the case had been initially filed. As I discussed earlier, *Moran* requires no diligence of plaintiff other than a request for trial de novo. But if some sort of diligence were required it would not be to apprise the court the *five-year* period had been exceeded by its trial setting. For, under *Moran,* the 583(b) period does not expire five years after the case was filed; it expires in five years plus the duration of time the period is tolled—from the request for trial de novo until the trial date the court actually sets. Tolling means just that. The amount of time involved simply does not count at all in calculating the limitation period the law allows for certain steps to be started or completed. There was no reason for plaintiffs to warn the trial court that five years would expire before the trial date it had chosen to set because five years was no longer the operative 583(b) limit. Accordingly, plaintiffs can hardly be accused of failing to exhibit due diligence for omitting a warning about the expiration of a time limit that was not expiring.

In the instant case, plaintiffs behaved reasonably. A clear holding of the California Supreme Court and this court's interpretation of that holding

told real parties they need not do anything beyond what they already had done to activate the tolling period. Furthermore, that Supreme Court holding and our earlier opinion reassured them the tolling would continue until the date the trial court actually set for trial. Nothing in these earlier opinions warned them it was their duty somehow to alert the trial court if that court in the exercise of its sole sua sponte duty chose a date beyond five years. Since in *Moran* only 43 days remained of the original five-year period it was very likely any date the trial court set upon remand of that case indeed would be beyond five years. Yet the Supreme Court tolled the operation of 583(b) until the actual trial date whether or not that turned out to be more than five years after the case was filed.

Now after the fact the majority is informing plaintiffs the ball was in their court after all, despite the Supreme Court's unequivocal call handing that ball to the trial judge. As stare decisis dictates it is for the Supreme Court alone to revisit *Moran,* common fairness suggests any change any court makes in the *Moran* rule should be prospective. It is one thing to require plaintiffs to exhibit diligence in ways the courts say they must; it is quite another to require them to exhibit diligence in ways the courts expressly say they need not.

The principle Justice Thompson found in *Moran* and applied to the facts of that case cannot be distinguished away. And, in my opinion, that principle compels denial of this petition. Ours was the only defensible position both in terms of careful interpretation of language and of proper respect for stare decisis. This division had it right the first time and should have stuck with it.