Filed 11/10/22  Los Portales Association v. Fitness International CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| LOS PORTALES ASSOCIATION, LP<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>FITNESS INTERNATIONAL, LLC<br><br>    Defendant, Cross-complainant and Appellant. | E078152<br><br>(Super.Ct.No. CVRI2102808)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

Dorsey & Whitney, Bryan M. McGarry, Lynnda A. McGlinn and Jessica M. Leano for Defendant, Cross-complainant and Appellant.

1

Law Offices of Daniel A. Kaplan, Daniel A. Kaplan and Daniel C. Pierce for Plaintiff, Cross-defendant and Respondent.

In 2015, the predecessor in interest of Los Portales Associates, LP (Los Portales or plaintiff), leased building space to Fitness International, LLC (Fitness or defendant), for the commercial purpose of conducting a fitness club and other related business enterprises.  In March 2020, Fitness, like other businesses, was required to cease indoor operations due to Covid-19 and informed Los Portales of its inability to pay rent.  To address the problem, Los Portales and Fitness entered into three successive letter agreements modifying the lease to forgive or defer certain nonpayments of rent and related expenses, while confirming Fitness's obligation to repay the deferred rent beginning in 2021.  Fitness, which continued to occupy the rental premises throughout the lease period, failed to repay the unpaid rent amounts and related expenses as agreed.  Los Portales filed a complaint against Fitness for recovery of the unpaid rent to which Fitness filed a cross-complaint.  Los Portales sought a prejudgment writ of attachment to secure the amounts as yet unpaid, which was granted.  Fitness appealed.

On appeal, Fitness argues (a) that the trial court abused its discretion in considering two declarations which were originally filed (but were corrected prior to the hearing) without indicating the state in which they were executed; (b) there is insufficient evidence to support the order granting plaintiff Los Portales's right to attach (1) due to Los Portales's breach of various provisions of the lease agreement; and (2) lack of evidence Los Portales was likely to prevail on the merits.  We affirm.

2

## BACKGROUND

In 2015, defendant Fitness entered into a retail lease agreement with the predecessor in interest of plaintiff Los Portales, to lease certain premises, described in the agreement, located in a then proposed shopping center at Menifee Lakes Plaza, in Riverside County, including the right to use common areas. The primary term of the lease was for 184 months (15 years, 4 months), with options to extend the term for three consecutive 5-year terms. The rent for the premises comprised a minimum rent of $886,160.00 per year ($73,846.67 per month), plus a share of the common area expenses, insurance, and a pro rata portion of the real estate taxes. The primary use of the premises was for the operation of a health club and fitness facility, along with various ancillary or incidental uses of a retail nature as well as for other related uses. However, the lease terms also permitted defendant to change its use of the premises to any alternate legal use which is not otherwise expressly prohibited by the Lease and is not in conflict with any exclusive use agreement then in effect.

In 2020, the Covid-19 pandemic interrupted businesses, and on April 6, 2020, defendant failed to pay rent. As a preemptive matter, defendant emailed correspondence to the various lessors to which it owed rent, indicating it would discuss lease modifications. In addition, defendant's general counsel emailed correspondence taking a rather more aggressive tactic of asserting that the landlords were responsible for the business closures by preventing Fitness from operating its business, interfering with Fitness's quiet possession and enjoyment of the premises, and for falsely representing

3

that Fitness's use of the premises would not violate any restrictions on its use. The letter also asserted that due to the unforeseen occurrence of the pandemic closures, Fitness's operation of its business has been made impossible, and that its business purpose has been frustrated, warranting abatement of all rents.

After engaging in negotiations, plaintiff and defendant executed a series of three successive letter agreements, amending the lease and reaffirming Fitness' obligation to repay deferred rents at a later date. The first such agreement was dated June 9, 2020, and provided that 50 percent of the rent due for the months of April and May was abated and forgiven by plaintiff, while 35 percent of the rents for those months would be deferred until January 2021, when it would be repaid by installments between January 1, 2021 and June 30, 2022. The amendment further provided that the additional rents due under the original lease (for common area maintenance and taxes) would also be delayed and deferred until August 2020.

The second letter agreement was dated August 13, 2020, and further amended the terms of the original lease and the June 9, 2020 letter agreement by deferring and delaying the payment of the minimum rent for the month of August 2020 until January 2021, under the same terms as the previously deferred rents, but requiring payment of the additional rent as provided under the original lease.

On October 9, 2020, a third letter agreement was executed, deferring 100 percent of the minimum rent due for September 2020, subject to repayment as provided in the previous letter agreements. No further or later modifications are alleged to have been

4

requested by defendant Fitness. But in January 2021, defendant failed to initiate the installment payments of the deferred rent.

On June 25, 2021, plaintiff filed a complaint comprising two causes of action: (a) for rent and damages pursuant to Civil Code section 1951.4, and (b) for rescission based on fraud in the inducement respecting the execution of the three modifications to the lease for rent deferral, seeking recovery of $706,186.99 in damages for the first cause of action, and for restitution of the full monthly rents ($73,846.67 per month as minimum rent) under the original lease for the second cause of action, along with attorneys' fees.

On August 6, 2021, plaintiff filed an application for a right to attach order and an order for issuance of a writ of attachment to secure the amount of $796,232.87 plus costs in the amount of $1,008.42, and attorneys' fees in the amount of $89,391.[1] Thereafter, on August 11, 2021, defendant Fitness answered the complaint and filed a cross-complaint against Los Portales alleging two causes of action for breach of contract (referring to the force majeure provision and the provision governing the lessor's representations, warranties and covenants), three causes of action sounding in common counts (for money had and received, for money paid by mistake, and monies paid and expended), and two causes of action for declaratory relief (referring to the closure period and ongoing restrictions).

---

[1] The application was supported by two declarations which, although executed within the State of California, omitted to state that the declarations were executed in the state. Fitness objected to the declarations. Thereafter, plaintiff submitted corrected declarations, with the same substantive averments, but with the execution in proper form. The corrected declarations were submitted prior to the hearing, and there is no evidence in the record that defendant objected to their filing.

The hearing on plaintiff's application for order and issuance of a writ of attachment took place on October 6, 2021, when it was taken under submission. On November 4, 2021, the court issued its ruling on the submitted matter, granting plaintiff's application for order regarding the writ of attachment subject to an undertaking in the amount of $10,000. Upon proof of the undertaking, the right to attach order and order for issuance of writ of attachment were issued. Defendant appealed.

## DISCUSSION

Defendant argues that the trial court erred in granting plaintiff's application for order and issuance of the writ of attachment because (a) the declarations submitted in support of plaintiff's application were not in proper form, lacking the statements that they were executed under the laws of the State of California pursuant to Code of Civil Procedure section 2015.5, and (b) there is insufficient evidence to support the finding of plaintiff's likelihood of prevailing on the merits in light of the force majeure provision of the lease and the plaintiff's breach of various warranties and duty to indemnify. We disagree.[2]

---

[2] The parties filed competing requests for judicial notice in this court: On February 22, 2022, defendant Fitness requested that we take judicial notice of a trial level decision from a Michigan Circuit court in a case that is wholly inapposite to the issues involved in the current case. We deny that request for judicial notice.

Thereafter, on April 15, 2022, Los Portales made a request that we take judicial notice of several documents. One document was Governor Newsome's Executive Order N-28-20, which apparently was not submitted to the trial court although the trial court apparently took notice of several other executive orders. The other documents attached to Los Portales's request pertain to trial court orders in other cases involving Fitness, International, LLC, from other counties, which also were not considered by the trial court. We deny this request for judicial notice, also.

*[footnote continued on next page]*

First, the argument that the declarations submitted by Los Portales in support of its application for writ of attachment should have been rejected is a non-issue. Defendant, who prepared the appendix on appeal, failed to acknowledge that the place of execution was duly included in corrected declarations, which were submitted prior to the hearing, and were filed without objection by defendant. We are disappointed by defendant's counsel's act of submitting an incomplete version of the corrected declarations sans execution pages, where the record demonstrates defendant did receive the complete versions of the corrected declarations, while arguing that the very portion omitted was defective. Such conduct, at a very minimum, is disrespectful of the court.

In any event, the corrected declarations fully conform with Code of Civil Procedure section 2015.5, disposing of this non-issue, so we will not be further distracted. We turn to the propriety of the trial court's order granting the requested prejudgment relief on the merits.

Next, on May 16, 2022, Fitness submitted a supplemental request for judicial notice in support of its reply brief. We deny this request as moot.

Finally, on May 31, 2022, Los Portales filed a supplemental request for judicial notice in opposition to Fitness's supplemental request for judicial notice. We deny this request as moot, also.

The parties may wish to review the rules governing requests for judicial notice in the reviewing court. (See, Cal.Rules of Ct., rule 8.252; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1141, fn. 6, citing *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064 [overruled on a different point in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276; see also, *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 743 [judicial notice is limited to the fact of the existence of hearsay documents, and not the truth of the contents thereof].) Given that decisions of other inferior courts, especially out-of-state courts, necessarily involve the application of different legal principles to different facts, as well as the fact none of the decisions posited for judicial notice is a decision by a reviewing court, their usefulness in this appeal is nil.

7

a.      *General Principles Governing Prejudgment Attachments*

Code of Civil Procedure section 483.010, subdivision (a), provides that "an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees."  "The term 'contract' as used in Code of Civil Procedure section 483.010, subdivision (a) has been interpreted to include leases of real or personal property."  (*CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 540, citing Legis. Com. com., 15A West's Ann. Code Civ. Proc. (1974 ed.) foll. § 483.010, p. 47; *Stanford Hotel Co. v. M. Schwind Co.* (1919) 180 Cal. 348 [realty]; *Walker v. Phillips* (1962) 205 Cal.App.2d 26 [personal property].)

"""""Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment.""""  (*Royals v. Lu* (2022) 81 Cal.App.5th 328, 345, quoting *Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476, italics omitted.)

"The general requirements for prejudgment attachments include the following: The action must seek money, be based on a contract, where the total claim is fixed or readily ascertainable and not less than $500 [citation]; that the claim be unsecured [citation]; and that the plaintiffs make a showing that they 'on the facts presented would be entitled to a judgment on the claim upon which the attachment is based.'  [Citation.]"  (*Hobbs v. Weiss* (1999) 73 Cal.App.4th 76, 80, fn. 1.)  "'A claim has "probable validity"

8

where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.' [Citation.]" (*Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 852.) The contract must also be commercial in nature. (*Ibid*.) "Although damages need not be liquidated, they must be measurable by reference to the contract sued upon, and their basis must be reasonable and certain." (*Kemp Bros. Construction, Inc. v. Titan Electric Corp., supra,* 146 Cal.App.4th at p. 1481, fn. 5., citing *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc., supra,* 115 Cal.App.4th at p. 540.)

Defendant challenges only the trial court's finding of probable validity that plaintiff will prevail in its action. To the extent that this presents a question of fact, we apply the deferential substantial evidence standard of review. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) "'[W]e must consider the evidence in the light most favorable to the prevailing party, giving such party the benefit of every reasonable inference, and resolving all conflicts in support of the judgment. [Citation.]' [Citation.]" (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 279.) To the extent, however, that the trial court's finding presents a question of law, we review it independently. (*Crocker National Bank*, *supra*, at p. 888.)

b.      *Application of Principles Governing Prejudgment Attachments to this Case.*

Defendant challenges plaintiff's entitlement to a prejudgment attachment on the ground the trial court erroneously determined its claim had "probable validity," in light of the force majeure exception in the lease and its other asserted affirmative defenses (breaches of covenants, warranties, etc.) to the collection of unpaid rent under the original, unmodified, lease.  We disagree.

"A trial court's finding on whether a plaintiff established probable validity is reviewed for substantial evidence."  (*Santa Clara Waste Water Co. v. Allied World National Assurance Co*. (2017) 18 Cal.App.5th 881, 885, citing *Lorber Industries v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535.)  "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim."  (Code Civ. Proc., § 481.190.)  Here, the original lease, which included the provisions on which defendant relies, was modified when plaintiff and defendant entered into negotiated letter agreements to modify the original lease.  The discussions appear to have commenced after defendant notified plaintiff it intended to rely on defenses to nonpayment of rent spelled out in the original lease, as well as Civil Code section 1511.  These modifications of the original lease support plaintiff's right to collect deferred rent and preclude defendant from relying upon the exceptions to the duty to pay rent.

It is well settled that "[a] contract in writing may be modified by a contract in writing."  (Civ. Code, § 1698, subd. (a).)  Defendant acknowledges executing the three

10

letter agreements by which the original lease was modified so it is estopped from claiming affirmative defenses under the original lease by which it induced plaintiff to enter into the negotiations in the first place.  (See *Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 678.)  "Generally '"four elements must be present in order to apply the doctrine of equitable estoppel:  (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."'"  (*Ibid.,* quoting *Colony Ins. Co. v. Crusader Ins. Co*. (2010) 188 Cal.App.4th 743, 751; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 997.)

Defendant does not appear to acknowledge the impact of the modifications to the lease, and instead asserts that defenses under the original, unmodified, lease excused its obligation to pay rent.  We agree that under the provisions of the original lease, the force majeure provision might have excused the obligation to pay rent, but instead of vacating the premises promptly following notice to the lessor of the conditions that would give rise to that excuse, as required under the force majeure clause, defendant continued in possession of the leasehold premises, made some payments of rent during the period of the lockdown, and entered into negotiations by which the lease was modified.  In this respect, any defense under the lease, including alleged violations of covenants or warranties, were forfeited by defendant's subsequent agreement to pay the deferred rent.

On this basis alone, plaintiff demonstrated probable validity of its claim. Moreover, defendant's tactic of repudiating the modifications supports plaintiff's claim for rescission and restitution due to fraud, as alleged in its complaint.

Notwithstanding the force majeure provisions of the original lease, as well as the statutory provisions of Civil Code section 1511, subparagraph (1), governing the principle of impossibility of performance, defendant and plaintiff entered into three separate letter agreements by which the original lease was modified. In those letter agreements, plaintiff forgave a portion of the unpaid rent and agreed to a deferment of its right to collect monthly payments of rent in return for defendant's agreement to repay the deferred rents in monthly installments beginning in 2021.

At this point we note that the sole authorities relied upon by defendant in support of its force majeure defense are two unpublished trial level decisions from an out-of-state jurisdiction, involving the same parent company but not involving similar facts. (*ROIC Four Corner Square, LLC v. Fitness International, LLC*, Case No. 21-2-04531-9 (Oct. 8, 2020, Wash. Super. Ct., Pierce Cnty; *BAI Century LLC v. Fitness International, LLC*, No. 2021 L 1322 (Cook Cty, Ill. Sept. 30, 2021.) We take defendant's reliance on such decisions to be a concession that its position lacks support under relevant and citable California authority. While unreported *appellate* decisions may be considered persuasive in an appropriate case (*Charpentier v. L.A. Rams Football Co.* (1999) 75 Cal.App.4th 301, 310, fn. 8, citing *People v. Davis* (1998) 19 Cal.4th 301, 306, in turn citing *State v. Higgs* (Ohio Ct. App., Jan. 12, 1990, No. WD-89-6) 1990 WL 1351), outside the judicial

12

district which gave rise to an unreported trial level decision, such a cited reference has minimal-to-no precedential value. We are also unpersuaded by out-of-state bankruptcy opinions from trial level motions which do not involve facts or legal principles relevant to those presented here. Thus, while defendant may cite the out-of-state authority[3], we are not bound to follow it.

By engaging in these negotiated letter agreements, defendant induced plaintiff to defer payment of previously due rents that had accrued under the original lease and was permitted to remain in possession of the leased premises. Defendant intended for plaintiff to rely on its modified promises, which plaintiff did, ignorant that defendant would refuse to pay the deferred rent by relying on provisions of the lease in effect prior to the modifications. This was detrimental to plaintiff. "'It is well settled that a person by his conduct may be estopped to rely upon [certain] defenses.' [Citations.]" (*Benner v. Industrial Acci. Com.* (1945) 26 Cal.2d 346, 350, quoting *Adams v. California Mut. B. & L. Assn.* (1941)18 Cal.2d 487, 488.) By inviting plaintiff's participation in the lease modification discussions, which reaffirmed plaintiff's right to collect the deferred rents, Fitness forfeited the right to claim defenses under the original lease by negotiating

---

[3] In support of its reliance on out-of-state trial level decisions, defendant refers us to California Rules of Court, rule 8.111(a), which is no longer in effect. In its stead is rule 8.115, which permits the citation of unpublished *appellate* opinions in appropriate circumstances. Defendant also cites opinions supporting this assertion, one of which has been disapproved by the California Supreme Court (without indicating the subsequent history of the decision), for the propriety of its reliance without recognizing that the cases cited merely reaffirm the propriety of citing unpublished *appellate* decisions in certain circumstance. These cases are inapposite and are not authority for the proposition that we should consider unpublished out-of-state rulings from inferior tribunals.

successive modifications to the original lease. (See *Leasequip, Inc. v. Dapeer* (2002) 103 Cal.App.4th 394, 403.)

It bears noting that it was defendant who initiated the negotiations which led to the modifications or amendments to the original lease and transmitted that invitation concurrently with the emailed letter from defendant's general counsel, informing plaintiff that defendant was excused from paying rent under the force majeure provisions, as well as by plaintiff's alleged violation of warranties and covenants under the original lease. The clear import of defendant's coordinated actions was to threaten to cancel the lease under the force majeure clause unless plaintiff provided some relief from the duty to pay rent. It is reasonable to conclude that defendant's subsequent decision to agree to the modifications to the lease signaled an intent to abandon those defenses under the lease during the period of rent deferment in return for retaining possession of the leasehold, having motivated plaintiff to defer the collection of the rent by its threat of relying on the lease terms excusing payment.

The modifications to the original lease are the elephant in the room. Because defendant expressly reaffirmed plaintiff's entitlement to unpaid and deferred rents in return for agreements allowing it to retain possession of the premises during the months in which no rents were paid, plaintiff established its claim was of "probable validity." Absent any citation to relevant California authority, the trial court properly rejected defendant's arguments that its duty to pay rent was excused.

14

Defendant also asserts the court erred in granting plaintiff's application due to the availability of other defenses under the original lease. For instance, it asserts plaintiff breached the lease provisions governing defendant's right to quiet enjoyment of the leased premises when the State of California ordered the shutdowns, as if plaintiff was responsible for the executive orders issued during the pandemic. Again, defendant relies on inapposite authority and an improbable premise to make the case that plaintiff is responsible for the executive orders requiring businesses to shut down in such a way as to give rise to liability for interfering with defendant's quiet enjoyment. We reject these arguments.

First, the argument ignores the legal effect of the three consecutive letter agreements which defendant executed agreeing to repay the deferred rent, commencing January 1, 2021. Second, cases cited by defendant involving dangerous conditions of the premises created by a lessor (ref. *Stowe v. Fritzie Hotels, Inc*. (1955) 44 Cal.2d 416, 423), are not relevant to the issues presented here where the cessation of business is not due to a dangerous condition created by plaintiff, or the result of any action on plaintiff's part.

Similarly, we are unwilling to hold that the plaintiff violated a lease provision agreeing to indemnify defendant where the condition of business closure was not attributed to any conduct by plaintiff which may have exposed defendant to liability. Defendant seeks to evade its obligation by pointing to the dependent nature of its obligation respecting the covenant for indemnification. The authority cited does not support the defendant's premise. In *Kulawitz v. Pacific Woodenware & Paper Co*.

15

(1944) 25 Cal.2d 664, 669, the court stated: "A covenant not to let other premises in the lessor's property or permit their use for certain purposes during the existence of the lease with the covenantee is binding and a breach thereof entitles the lessee to terminate the lease. [Citation.] The result in such cases is based on the rule that the condition broken by the covenantor excuses performance by the covenantee."

Here, plaintiff did not violate any covenant of the lease and nothing in the authority cited supports the notion that the plaintiff is responsible for the closure of defendant's business pursuant to an executive order issued by the governor. Nor does the cited authority involve a modification of the lease following the tenant's breach of the obligation to pay rent, where the modification reaffirmed the tenant's rent obligation despite the circumstances.

Defendant also argues that its duty to pay rent is dependent on its right to operate its business. Again, the authorities cited are inapposite, because in each case, the lessor violated an express covenant in the lease, which did not occur here. Defendant relies heavily on the case of *Medico-Dental Bldg. Co of Los Angeles v. Horton & Converse* (1942) 21 Cal. 2d 411, where the lease stated that the lessor was not to lease any other premises in the building to another entity which operated a drug store. A doctor moved into the building and signed a lease in which he covenanted he would not operate a drug store, but soon violated that covenant by operating a drug store in the same building. The original lessee advised the lessor of the breach of the restrictive covenant not to lease to a drug store, but the lessor was unable to stop the doctor's operations, so the lessee vacated

16

before another rent payment was due. The court held that the tenant did not breach his lease by vacating the premises because the lessor, in failing to abate the competing drug store, violated the restrictive covenant. (*Medico-Dental Bldg., supra,* 21 Cal.2d at p. 434.)

The above authority does not support an inference that plaintiff breached a covenant without some showing that plaintiff was responsible for the closure orders issued by the State of California. Additionally, the authority cited supports our conclusion that in order to rely on the affirmative defense of breach of a covenant, defendant was required to vacate the premises. Further, the authorities relied upon by defendant do not address the all-important fact in this case regarding defendant's active participation in successive letter agreements after the declaration of the state of emergency, reaffirming its obligation to pay back the deferred rent.

Defendant agreed to pay the deferred rents in 2021, so it cannot argue with a straight face that its duty to pay rent was dependent on its ability to operate its business. Nor can it have it both ways: reliance on the excuses for nonpayment of rent under the original, non-modified provisions of the lease, required defendant to vacate the premises, which defendant did not do. Instead, defendant sought to have it both ways: avoid the payment of rent during the shutdown, while also avoiding the need to terminate the lease based on force majeure or Civil Code section 1511, and vacating the premises.

Further, defendant asserts the trial court misconstrued the purpose of the lease as being for the occupancy of the premises, as opposed to the operation of a business. We

17

disagree.  The trial court correctly concluded that while the lease permitted or authorized defendant to conduct business as a health club on the premises, it by no means *required* defendant to do so, and, in fact, authorized defendant to conduct other types of business on the premises.  In other words, the basic object of the lease was for the right to occupy certain premises in which defendant was permitted to conduct its business.  Of note is the fact that during the period of the shutdown, defendant continued to occupy the premises, subject to a modification of the lease permitting it to defer rent payments until 2021.  Further, other provisions of the lease permitted defendant to conduct other forms of business on the premises, so it was not limited to running a health club.  Thus, defendant's duty to pay rent was not dependent on its ability to conduct business as a health club.

To summarize, defendant's tortured interpretation of plaintiff's obligations, warranties and covenants under the lease do not aid its position that plaintiff's claim was not of probable validity, where defendant agreed to modifications to the lease which included a reaffirmation of its obligation to pay deferred rent and affirmance of the lessor's right to enforce the same.

**DISPOSITION**

The judgment is affirmed.  Respondent is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                                                          P. J.

We concur:

McKINSTER _____
                              J.

MILLER _____
                              J.